Wickham, in reply.
Relying on the case of Quesnel v. Woodlief, I have not brought authorities to prove parties contracting under a mistake may be relieved; but believe, that many such may be produced.

Car. ad-Vo vult.

ROANE, Judge.
Two general questions present themselves in this case. 1st. Whether, by the contract which took place between the parties, relative to the land in question, the appellees bound themselves to any general warranty as to the land really contained within the tract then sold? and, if not, as I am clearly induced to believe from the testimony; then 2nd. Whether under.all the circumstances of the contract, the appellees must submit to the loss arising from the deficiency of the land? Which, including the ten acres called the meeting-house tract, is stated by the county surveyor to be about sixty-six acres; being so far short of the quantity of 578 acres called for by the deed; as the survey makes the tract contain, exclusive of the meetinghouse tract, only 512 acres, 1 rod,- 36 perches.
Before I go particularly into the second question, I will state some principles which appear to me to govern the case.
1st. In acontract, every serious and deliberate communication which has taken place between the parties, relative thereto, so far as a former one has not been revoked by a latter, must be considered as forming the basis of the contract, with this exception, that the treaty must not at any intermediate time have been at an end.
2nd. That a communication or representation in a public advertisement, relative to property offered for public sale, must be considered as one of these communications with reference to any person who may become the purchaser.
3rd. That a representation of a fact by one, to another contracting party, should be fair and true; and if the former asserts to the latter a fact, the truth of which he has it in his power to ascertain, but does not, and it turns out to he untrue, he shall be responsible himself for the consequences of that event, and the party to whom the representation is made shall not be injured thereby. This doctrine is explicitly laid down in the Court of Ring’s Bench in En gland, in the case of Macdowall v. Fraser, Dough 260, relative to representations in cases of insurance; but the principle of the doctrine, being founded in natural justice, must equally apply to all contracts.
*268 4th. A misrepresentation may at any time before the conclusion of the bargain, be removed by a just representation of the fact; but it must be clearly and explicitly removed; for, if it be equivocal only, the ruie concerning misrepresentations, which I before mentioned, will take place.
5thl That in contracts it may be said to be a general rule, that the purchaser takes upon himself usual and ordinary risques, as those arising from the variation of the compass in the present case; but is not, unless it be so stipulated or understood between the parties, insurer against those great defalcations which can only arise from the fraud of some antecedent holder of the land, or the gross mistakes of unqualified surveyors; and, whenever these latter risques are involved in the contract, it should clearly appear that such were contemplated by the parties.
In deciding the question, I shall have particular regard to these principles; without perhaps referring particularly to them.
The question in this case, as depending' on the answer of the defendants solely, is very clear for the appellants; and under that point of view, I shall consider -it in the first place.
The advertisement stated in the appellant’s bill, and admitted by the answer of James Hite, contains an unqualified assertion, that the tract in question contained 578 acres; and this assertion being a representation by the executor, who was fully competent to know the truth of the fact, was a sufficient, ground for those who wished to purchase, wheron to rely confidently in making their estimate of the number of acres.
The principal defendant, Hite, in answer to that part of the bill which charges a declaration to have been made by him at the time of the sale, that he would warrant the number of acres mentioned in the advertisement, although he denies havingthen made such a declaration, does not go on to say, (notwithstanding it would have been much in his favor to have said it, if true,) that he declared he sold the land for more or less; but the answer is silent on the subject, and, by stating the purport of his declaration to have been as it is stated in his answer, and which, I conceive goes only to the title of the land really comprehended, is at least á tacit admission that no further or other declaration was made by him at the time. But, if no such declaration was then made, the impression derived from the adve-r tisement was in full force; and I suppose in this view *269 ef the case, that all persons will agree, the appellants are entitled to relief.
This result, however, arises from a view of the bill and answer only.
To come now to the testimony: From which it will appear, that the impression alluded to was kept up by the declarations of Kuner the crier, who stated the number of acres. This evidence, fortifying the allegations of the bill, is' clearly entitled to weight; and I suppose if the case had stopped here, the same conclusion would clearly result, as I have supposed resulted from a view of the bill and answer only.
But, I admit, it is proved by the weight of testimony in the cause, that after this declaration was made by the crier, Hite, the principal defendant, said, “that the deeds called for 578 acres; and he sold the same for more or less.”
It was well observed at the bar, that whether this last declaration of Hite was made or not, was a point not put in issue by the answer; although, that defendant was subsi antially called on to say, whether the declaration stated in the bill, or what other declaration relative to the number of acres, was made by him at the sale. ' But, although he did not undertake to swear to the fact himself, he has, nevertheless, examined witnesses to establish it; and it is somewhat remarkable, that the testimony of a material witness was produced as to this point, by a leading question.
This looks too much like avoiding the great end and object of resorting to a bill in equity, which is an application to the conscience of the defendant, and seems like bolstering up a cause, with respect to a fact not put in issue, by resorting to the consciences of witnesses who may be less scrupulous.
But without undertaking to say that the testimony as to this declaration, should, for the reasons given, be thrown out of the case, let us consider the effects of the testimony itself.
If this alledged declaration of the defendant Hite had stood single, I think it would clearly admit of a question, whether under the reason of the 5th principle before laid down, the loss arising from the deficiency in this case ought not to be borne by the appellees?’ It would also deserve to be considered in addition thereto, whether as small risques are generally incident in sales of land arising from variations in instruments, the words more or less, might not have been thrown in for greater caution, to avoid any re *270 sponsibility for them? At least it might have been so understood by the appellants, and thus had a tendency to continue their impression.
But, I consider the declaration as not standing single. I consider the advertisement as having justly raised a confidence as to the number of acres of land, which was kept up and confirmed by the declaration of the crier under the eye of the principal defendant himself; and this declaration, equivocal in itself, was not sufficient to do away that impression.
I think that the contract was consummated under that impression; and, therefore, as to the appellee, he had, by mistake perhaps, misled the plaintiff with regard to a fact, the truth of which he might Mare known to be otherwise, but did not take the trouble to be informed about; and, as to the appellant, he has agreed to give a valuable consideration for that which did not exist, but which relying on the veracity of the defendants, he believed to exist.
The defendant Hite, jun. admits, that on the deficiency being stated to him, he agreed, as to himself, to make an abatement; but that as an executor, he could not agree to do it. This is the part of an honest man; and moreover proves, that he did not think the risque of this great deficiency was contemplated in the bargain: otherwise, there could be no obligation on him to make a recompence. This, is a strong circumstance to shew the true idea of the contract; and, although he could not, as he thought, do that in his fiduciary character, which, as an honest man he was willing to do for himself, yet, we have power to compel him to do it.
But it is contended, that the acceptance of deeds by the appellants, after they knew of the deficiency, is a waiver of the redress now sought.
I answer, that the after-accepted deed was only to complete an assurance for the land really contained in the tract, there having been one of the tracts of which M’Donald’s tract was composed, left out of the former deed; and, it never was the intention of the plaintiff to set aside the contract relative to the land purchased. They were, therefore, justifiable in completing it, especially as their bonds were out for the money. But the injury they complain of, is entirely of a collateral nature, as I have before endeavored to explain; and is wholly independent of the sale of the land, although it grows out of it. Therefore, a remedy for the injury was not to decline taking the *271 deeds, or require others, than those which were made; but to retain money contracted to be paid, under a mistake, and, consequently, so far without a consideration.
If it be said, that the deficiency here is so small, as that we ought not to interfere, I answer, that the deficiency stated, has certainly not arisen from the ordinary variation of instruments; but was such as to produce a conviction in Hite, that it did not arise from that cause; and, therefore, I cannot distinguish it from the ease of a deficiency of one-third or one-half. Parties must be permitted to make their own bargains, so as to bind themselves; but to bind others, those bargains must be fair and clearly understood.
With regard to the case of an excess above the quantity sold, it may not follow of course that where there is an abatement for a deficiency, there should be payment for the excess; but, as it is not necessary to decide the question, I mean not to give an opinion on it.
As to the retainer of the money in the present case, it seems to be a fair mode of proceeding. For, the appellants have paid what they suppose to be due, and tire balance is subject to the decision of the Court. As to the point, who were or were not the holders of the bonds, they were qntirely strangers to it; but, if the set-off\ now claimed, is an equitable one, it cannot be lost by the assignment of any bond, against which it ought to apply.
With regard to the survey in the record, if it was made ex parte, ox*, there was any just exception to it, in the opinion of the Chancellor, it ought not to conclude the appellees.
The plaixitiffs have not shewn any title to the meetinghouse paramount to the present purchase, or that the executors, when they sold it, knew that the title was not in their testator. With respect to this, then, the case stands in no other point of view than the rest of the land coxxtaixxed in the tx*act; and, therefore, with regard to that poixxt, thex*e is xxo ground for interference.
But, as to the other ground of complaixxt, the case ought, in my opinion, to be sent to the high Coux-t of Chancery, there to be proceeded in, according to the principles I have just now stated.
The pai’ticulars of the decree, to be made by this Court should be, if my opinion wex*e to prevail, similar, or neax*ly so, to those in tlxe case of Quesnel v. Woodlief, in this Court; and, as the ground of decisioxx in that case seems not to be well understood, I will take the libex'ty for my *272 self to say, that the principles and reasons which governed me in that case, were substantially the same which I have endeavored to state as governing in this: and the decision in that, in its principles, appears to be an authority in the present case. I am, therefore, for reversing the decree.
FLEMING, Judge.
There are two points in this cause. 1st. What was the contract between the parties ? 2d. Whether the contract, as really understood between them, has been broken by the appellees?
With respect to the first: It appears that M’Donald had bought it for 578 acres, and that the deeds expressed that quantity; but when the crier set it up for that number of acres, that Hite declared he was executor only; that M’Donald held it for 578 acres; but that he (Hite,) set it up for more or less: Which explicitly shews he did not mean to take upon himself the risque of a deficiency; and that the appellants so understood it, is manifested by their .accepting deeds for the land near twelve months after-wards, when the deficiency was known: A circumstance, which proves their acquiescence under the loss at that time, and that they did not then suppose they had any' cause of complaint, or that any allowance ought^ to be made; although they were afterwards advised otherwise. From all which it is evident, that both parties understood the appellants were to take the risque of any deficiency on themselves; and, therefore, the purchasers have no ground for relief.
This satisfies the second enquiry; and shews clearly, that there has not been any violation of the conti-act on the part of the appellees.
But then the case of Quesnel v. Woodlief, in this Court, is objected, as an authority which decides the present cause. That case, however, differed widely fx-om this. For, in the first place Woodlief sold his own land, and that was an old family estate, the true quantity of which was probably known to him; but here, Hite was only executor', and not supposed to be conuzant of the exact number of acres. In the second, place, Quesnel was a foreigner, acquainted with our language or measure; whereas the appellants here are natives and perfectly acquainted with both. Thirdly, that was a private sale, and, thex’efore, more liable to imposition; but this was a public auction, and the terms more or less expressly declared. Fourthly, in that case, Woodlief had actually sold to his bi’other Pe~ *273 ter a part of the estate; but nothing of that sort existed here. Lastly, the deficiency there amounted to almost one-fourth; whereas, here it was scarcely a tenth.
These circumstances essentially distinguish the two cases; and, therefore, although I think relief was properly granted in that case, yet I cannot agree, that it ought to form a precedent for the decision in this. The consequence is, that I am of opinion, the decree of the High Court of Chancery should be affirmed.
CARRINGTON, Judge.
In this case an executor is directed by the will of his testator to sell his lands and divide the proceeds amongst ten legatees, finds deeds for 578 acres, and governing himself by them, advertises that he will sell that quantity; and the question is, whether, if he afterwards qualifies the advertisement before the sale, and declares that he will not sell for any specific quantity, he ■ shall be bound for the quantity stated in the advertisement ?
A public advertisement- of this kind ought not to influence the decision much; because, it is only notice to purchasers to assemble, and they inform themselves of the particulars at the sale.
In the present case, the executor gave notice, that those who wished to purchase might inspect the deeds, that they called for 578 acres; but that he only sold as much as they contained; and that he would neither warrant the title or quantity. All this turned out to be true; and nobody was deceived: for, the title-papers were according to the representation, and there could be no fraud or deception. So, that the real contract was, that Hite sold the quantity that should actually be found to be in the tracts; and the purchasers took the lands which the deeds should in fact command, let the quantity of them turn out to be more or less than 578 acres: A position, which is confirmed by the subsequent acquiescence of the parties; for, three deeds, drawn by Jollife or his counsel, and all for 578 acres more or less, were afterwards accepted by the purchasers. So, that upon the terms of the contract, there does not appear to be the least ground for relief, according to the general principles of law and equity.
But what would render it peculiarly hard in this case, is, that so much time was suffered to elapse before any complaint was made; and, in the mean while, Hite had distri *274 buted the proceeds amongst the legatees. It would, there» f°re> be extremely harsh, by interfering at this late period, and making an abatement, to send him in search of contribution against the others.
This is not like the case of Quesnel v. Woodlief. There, Woodlief acting for himself, sold an estate which had been long held in his family, and the quantity whereof he might, therefore, reasonably be presumed to know: whereas, Quesnel was a foreigner, and did business by an interpreter. He had, before the deeds, often declared that he was willing to take it at 800 acres; and, when they were executed, he enquired into the meaning of the words more or less, upon being informed, he asked whether he would be allowed for deficiency? To which Woodlief answered he should, if Quesnel would pay for the excess. Here, indeed, the conversation stopt, and no reply was made; but, as soon as the deficiency was known, instead of acquiescing, as was done in the present case, he gave an early notice that he should demand a deduction. All which circumstances vary that case so much from this, that it ought not to be considered as forming a precedent for the judgment which we are now to give.
Upon the whole, people must be satisfied with.their contracts as they have made them; and, as the purchasers here have had the full benefit of their bargain, according to the terms of it, I cannot see any ground for relief; but think the decree ought to be affirmed.
LYONS, Judge.
If it -be once laid down as a general principle, that, where a sale of a tract of land is made at auction for 1000 acres, and it afterwards turns out to be only 100, the purchaser shall have no relief, it will put an end to all sales by auction. To say, in such a case, that the injured purchaser shall not have a right to retain the purchase money against the vendor, is, in my opinion, contrary to all the principles and maxims of a Court of Equity.
Upon general principles, it has often been decided, that ■ if the purchaser discover a defect before payment of the money, he may retain: And, that great deficiency would foe relieved against, was determined in Quesnel v. Woodlief.
The general rule, as laid down by civilians, is, that if there be not a full knowledge of all the circumstances, it is ground for avoiding the contract, [Gee v. Spencer,] 1 Vern. 32; [Mildmay v. Hungerford,] 2 Vern. 243; and the rea *275 son is, because the buyer proceeds upon the supposition of a quality, which, if'the thing does not contain, the contract should not oblige the party, who contracts under a misapprehension. For, in this case, the party is not conceived to have agreed absolutely, but upon supposal of the presence of a thing or quality, on which, as on a necessary condition, his consentwas founded: and, therefore, the thing or quality not appearing, the consent is understood to be null and ineffectual. Grotius, lib. 2, c. 12, § 8, 9; [Gwynne v. Heaton et al.] 1 Bro. C. C. 9; [Heathcote v. Paignon,] 2 Bro. C. C. 175; Puffendorf, Bk. 1, c. 3, § 12. Which is equally true, whether the seller knew of the defects or not; for, he ought not to reap the advantage of an apparent value, which the thing sold seemed to have, and yet had it not. Bom. lib. 1 Tit. 2, § 11.
It was upon these grounds, according to my recollection, that Quesnel v. Woodlief was decided. For in that case, the Court declared there was no fraud in the defendants, but that both parties had acted under mistake; and, therefore, they relieved the plaintiff. Consequently, if there be any real difference betwixt that case and this, it should be clearly shewn, or else the decision there ought to govern.
But I think there are some differences as to the sixty-six acres. 1st. Woodlief was owner of the land and lived upon it; but, the plaintiff here was only executor and a stranger to it. 2nd. The executor in this case made an open declaration that he would sell according to the deed, by which I suppose he meant the quantity of acres which the land should be found to contain: whereas, there was no such declaration in that case. 3rd. As soon as the purchaser discovered the error in that case, he mentioned it at once and asked for an abatement, (which was right; for an abatement or a rescission of the contract, should be recently demanded; because, the vendor may otherwise lose an opportunity of indemnity or a new sale of the estate:) but here a long acquiescence took place; and new deeds were accepted in the mean time. Which afforded a strong presumption that the parties were satisfied; and put it out of the power of the executors to sell the estate again.
Therefore, in the present instance, there was, as to the sixty acres, perhaps no grounds for relief upon the circumstances of the case.
But with ¿respect to the ten acres, Í think the Court ought to interpose. It appears, that this parcel belonged to the *276 Quakers; that they had built upon it; that the executor sold it, but never mentioned the title of the Quakers or made any reservation with regard to it: Although the answer states, that the defendants knew nothing of that title, and there is proof that they were ignorant of it.
Upon these grounds, I think there should be a deduction on account of the ten acres; as they fall expressly within the influence of the principles, which I have mentioned before: to ascertain the value of which parcel, an issue should be directed and the amount of the verdict deducted.
PENDLETON, President.
The advertisement upon the 2nd of August, 1789, was of the seat where M’Donald lived, containing 578 acres, and the sale was to be on the 16th of November. #
Upon the 16th of November, the crier having mentioned 578 acres, the executor proclaimed, that he believed the title was a clear one (except as to two or three acres claimed by Perry, who was willing to pay for that in proportion to the sale;) but, that he sold as executor and would not warrant: That, as to the quantity,' the deeds called for 578 acres, but he sold it by the deeds, more or less; and so it was purchased.
When they met next day to give the bonds, nothing past as to the quantity; their claim then, was to get a general warranty, which the executor refused, and they gave it up.
But they perfectly understood the terms, that they were to take the land by the deeds more or less. For, three days after, in the deed prepared by Jollife himself, the tract is not conveyed in the aggregate, as is usual, but each parcel severally; deducing the title to each from the patentee, to Mrs. M’Donald, and reciting her will, empowering her executors to sell. I presume this unusual method was pursued, in consequence of the executors selling the land by the deeds.
However, at this time the deficiency was not discovered, nor probably presumed to be so great as it was; and, therefore, if it rested here, I might have had some difficulty at least, in deciding that this being a sale by an executor took it out of the general principle. But as the case is, that difficulty is removed by what followed.
This deed was to all the purchasers, and was for three tracts only; a second deed was likewise to all the purchasers and was for three tracts only; and a third deed is made to *277 Jollife and Neal for the four tracts, pursuing the same method of conveying the sevei’al tracts.
That the deficiency had been then discovered, is obvious to me. The survey is datedin that month, October, 1790. No day is mentioned; but, as this is a re-survey, by the County Surveyor in consequence of what Mr. Hite. objected to the first, it is very probable that the deficiency ■was discovered by the first survey, and that the dispute about the deduction was previous to this deed. Ridgeway fixes the time in Jiugust or summer, 1790.
But I will pass this also as no conclusive acquiescence. Neither of these two deeds are recorded; and eleven months after the last, a third is drawn to Jollife only, pursuing the same mode of conveyance of the separate parcels, containing the words more or less as to the two principal tracts, and omitting them as to the two smaller of about 20 acres each, in the same manner as it was in the deeds-referred to. And this deed is recorded.
The ground of the present demand is Cordell’s survey. D. S. F. E. The two small tracts are surveyed together, and contain 44 acres; the full nominal quantity. So that the deficiency is in the two large tracts. The 336 he makes 309; the difference 27/ and the 198 he reduces to 158; the difference 40; which added to the 27, makes 67, and this at 31. lis. Id. is238¿. 2s. 7d.
But in the deficiency of the 198 acre tract, is included the meeting-house; which, they say, but have not shewn, they had aright to. Ten acres at Si. 11s. Id. is 351. 10s. 10d. So that the real dispute is 57 acres, equal to 202l. 11s. 9d.
It is remarkable, that in this ex parte survey, the Surveyor speaks of lines and corners, as said to be, or supposed to be lines and corners of adjoining land-holders; which •is too uncertain. So, that if the decree is reversed on the merits, a final decree ought not to be entered; but the cause remanded with directions to have a survey made in presence of both parties, to ascertain the real deficiency.
But I am of opinion, that upon the merits, the decree of dismission ought to be affirmed.
To state it upon the original ground;
The Court of Chancery will not be bound by the expressions more or less in deeds; but will resort to the real contract to enquire what was the intention of the parties; Whether to sell and buy a thing? as in this case, a tract of land; or a specific quantity? as a certain number of acres.
*278 In the first case, of a sale in bulk, the Chancery will net interfere, unless in the case of fraud.
An instance of fraud is mentioned in 1 Ch. Cas. where the seller knew there was a deficiency, and did not disclose it; and we know that in that Court, a suppression of truth is equal to a false suggestion.*
But, neither this, or any other fraud is. imputed to the vendor in the present case. The estimation was formed from the deeds, for which resort was had to the Clerk’s office. This shews, that the executor did not know of the deficiency; and, therefore, he is not chargeable with any deception.
• On the ground of mistake, the case of Quesnel v. Woodlief in this Court is relied on; which will be noticed hereafter as not applicable.
The ease of Burt v. Barlow, 3 Bro. C. C. 451, seems more to the present purpose. Catharine Burt, entitled at the death of the survivor of herself and three others, to one-fourth of a personal estate, estimated at 2400/., in order to make Barlow, who had married her daughter, certain of receiving a proportional part of the 2400/., gave her bond for 6001. payable to Barlow, in three months after the death of the survivor. The estate estimated at 2400/, proved, however, to be only 1140/.,- so, that the fourth was only 2851. instead of 600/.,- and the difference 325/. The executor of Mrs. Burt brought his bill to be relieved against the bond on payment of the 285/., on the ground of mistake in the estimate. The answer of Barlow, admitted it was understood at the time, that Mrs. Burt’s share would amount to 600/., but insisted that the bond was given to secure the 600/., at all events.
The bill was dismissed:
It is stated in the case, that she devised the 600/. to Barlow, but that circumstance is not mentioned either in the argument or the opinion of the Court.
Here was A bond founded on a mistaken estimate, and the deficiency much greater than in the present case, being more than half, whereas this is less than a tenth; and yet relief was denied.
This proves, that if there was a mistake in the understanding of the parties, yet if they meant to fix it at all events, however that circumstance might turn out, the Chancery would not relieve.
*279 In truth, relief on the ground of mistake, as all other questions upon contracts in Chancery do, depends upon the circumstances attending each contract.
Here, whatever impressions might have been made by the advertisement on the minds of those who attended to purchase, that the tract contained 578 ácres, any expectation of a warranty, that the tract contained that quantity, must have been removed by the publication at the commencement of the sale, that the deeds called for that quantity, but the executor sold the tracts by the deeds for more or less: Which I consider as a sale in bulk: where a mistake in the estimated quantity has • no influence, unless there was fraud in the vendor. The fact of this publication is proved by Bell and Angus M’Donald, who are not contradicted by Sword and Helm. They speak of the executors engaging to warrant a clear title, but nothing as to the quantity; and, as to what they do speak of, they are evidently mistaken from all the other proofs.
That the purchasers understood, at the time, that they bought the tract by the deeds, whatever quantity they should convey, is evident from the deed drawn so immediately after by Mr. Jollife the active purchaser; the peculiar form of which, must have proceeded from the nature of the contract impressed on the mind of the buyer.
So, that if it stood on its original ground, I should be of opinion there was no foundation for relief.
But, if there had been such originally, I consider what happened afterwards, as a confirmation of the agreement in this respect; when its effect upon the present question had been discussed, and fully understood as conclusive, and shutting the door of equity against relief.
The sale was on the 16th of November, 1789. On the next day, the parties met to . exchange bonds, when the warranty was insisted on at first, but afterwards given up.
The bond of the executor was taken to make the usual conveyance by executors, and four bonds given for the purchase money of 513/. 155. each. The deed was prepared by Jollife, bearing date three days after; and, in the summer of 1790 was executed, but not recorded. A survey had been procured by Jollife, and the deficiency discovered; and, then the discussion, on that subject, took place at Bush’s tavern, when Hite said, he was willing to make a proportional deduction for his own part (and for that purpose, I suppose, said or agreed that the County Surveyor might survey the land;) but, that he could not bind the others concerned in interest.
*280 This second survey is dated in October, (but no day is menti°ned;) and states the deficiency, for which the deduction is now claimed.
It being discovered that the first deed conveyed only three parcels instead of four, a new one is drawn and executed October 5th, 1790, for the four, pursuing the former mode of conveying the several parcels separately, and as to the two larger parcels the words more or less are used. This deed is also kept up and not recorded until it was out of date, possibly, though it is not stated, to give them an opportunity of bringing the other legatees into the terms generously offered by Hite. However, they had all this time, at least twelve months, to consider whether they would accept a deed on Hite’s terms, or bring a suit in equity to be relieved against the bonds, as to the deficiency, having had full notice that they could not otherwise obtain the deduction.
They did not take that step; but on the 2d of September, 1791, took a third deed exactly in the words of the second, except as to the date, and leaving out Neal’s name, and this is recorded in December following.
The executors proceed to distribute the estate among the ten legatees, assigning three of these bonds amongst the others, and Hite retaining one for his own share; which being for 500/. over-reached the amount of the deduction claimed, and certainly from that remaining in the hands of the executors, they should have retained the money, if they meant to claim it. But, instead of this, the plaintiffs proceed to pay off the whole of his bond to the executor; and we hear nothing of this, claim from October, 1790, until the elder Isaac Hite áS assignee of another bond had sued and obtained judgment on it; when, i. e. 1793, they file this bill, and if it was to succeed, the consequence might be, that Hite, besides losing his share, would have to pay the other one-tenth out of his pocket, by the improper conduct of the plaintiffs. Or, if it was to fall upon the executor, it would be liable to the same objection.
On this point, upon the reasoning in Cole v. Gibbons, 3 P. Wms. 290, and the Earl of Chesterfield v. Janson, 1 Atk. 301, I think with Lord Talbot, that after all these transactions, evincing in my mind a full confirmation and acquiescence after the deficiency was discovered and the claim perfectlv understood, it would be too much for any Court to interfere and set all aside: and, if contracts may be thus confirmed, in which there was originally mo *281 ral turpitude, the argument is much stronger where there is no immoral conduct in the bargain, but a prudent caution in an executor to avoid being involved in future contests.
But the case of Quesnel v. Woodlief, decided in this Court in October, 1796,* is supposed to be a conclusive precedent in favor of the present plaintiffs.
. I premise that I pay the same respect to that decision, as if I had been present and united in it: It is the opinion of the Court, and not who gives it, that is to guide us. I have carefully examined that record, and am free to declare, that I should have united in granting the relief the Court did, upon the circumstances of that case; but from a total dissimilitude of them, in their prominent features, to those of the present cause, the authority don’t apply.
1st. Quesnel was a foreigner, only about 18 months in the country, a stranger to our customs and language, and in his communications by an interpreter liable to an infinity of mistakes. Whereas, here the purchasers were neighbors, who for any thing which appears, knew the tract as well as the executor, and, from their frequentview, could judge as well as he, what was the probable quantity; but what is more material, they may be presumed to have known our customs and the difference between the purchase of a tract of land as it is, though a nominal quantity be estimated, and the purchase of a specific quantity.
2nd. The original contract, there, is not in proof; but, it is evident to me, that it was for a specific quantity, since the purchase fnoney amounts to 800 acres, at 41. per acre; and, that was the sum mentioned by Woodlief, when the conversation passed about the deficiency and surplus, and shews the real contract to have been to purchase by the acre. That conversation was not the contract, but passed at the time of signing the deeds, and strikes me as having no other effect than the common insertion of those often unmeaning words, more or less, in a deed: Which, however, in a question of the present sort, are only to be corrected by the terms of the real contract.
Here, the executors made proclamation that the deeds called for the quantity, but that he sold it by the deed, more or less. It is fully proved, and very intelligible, that the sale was to be of the tract, without respect to quantity, and people were to be under the risk of gain or loss, in that *282 respect; which would, no doubt, increase or diminish the price, according to the probable deficiency or excess of quantity, in the opinion of the bidder.
That it was well understood by the purchaser, I have shewn, from his having, in the deed he drew, immediately conformed to such agreement, by pursuing a very unusual form of conveyance.
This makes an important and conclusive difference in the two cases.
There was no confirmation or acquiescence equivalent to it, in Quesnel. On the contrary, as soon as he discovered the mistake, he sent a written notice to Mr. Ruffin, who held three of his bonds, that he should claim a deduction for the great deficiency, and published an advertisement to the same purpose in the Virginia Gazette. As' soon as one bond became due, Mr. Harrison, the trustee, advertised the sale of the land to satisfy it; upon which, Quesnel immediately filed his bill, and obtained an injunction to stop the sale. So, that he never deserted his claim, or lay by-a moment, for others to be involved in injury or difficulty in consequence of his neglect. Whereas, here, the effect of the contract was not only understood originally, but, when the deficiency was discovered, and the claim made, they were told it would not be allowed. Instead of commencing suit immediately, they lie by, and, after a year’s consideration, accept the deed in the same form as the former, and have it recorded. This, I, as the executors appear to have done, consider as a waiver of the claim; for, they proceed to settle with the legatees, and distribute the bonds. Another proof of the waiver is afforded in their having paid off the bond retained by th,e executor, against which it would have been more proper and equal to have claimed the deduction than against the assignee; although, by settled rules, he may discount against the assignee. '
There are many other lesser circumstances which distinguish the cases from= each other, but these are sufficient to satisfy me, that the precedent does not apply, so as to preclude what I conceive to be a just decree in the present ease.
. But it is said, that the principle on which that cause was decided, was, that there was a mistake in both parties; each expecting, the one that he had sold, and the other, that he had purchased 800 acres; a mistake, against which Chancery ought to relieve; and that the argument applies *283 here, since the defendant admits the plaintiffs expected that the tract contained 578 acres.
The principle was properly applied to the former case of a contract to sell a specific quantity. But, if it wras meant to change or set aside a real contract for the sale of a tract of land in gross, at the risk of the purchaser for gain or loss, by a deficiency or excess in the quantity it was supposed to contain by both parties, (which is the present case,) I do not hesitate to say, that it was carried too far; being an interference with fair contracts, which no Court has a right to make;'* since there was no mistake in the contract, whatever there might be in the estimate contemplated.
Such contracts are made every day for the purchase of tracts of land in gross. A man wants to sell his land, and another willing to purchase, enquires what is the quantity; the vendor answers, “ I hold it for so many acres, but I mean to sell the tract as it is, more or less, and such is my price.” Upon which they bargain. This is perfectly understood by planters and farmers, even of the lowest order; and, I should have no doubt of its having been so by the present purchaser, even if not proved by the form of the deed.
How are all these contracts to be departed from, and compensation made to either party, (for both stand on the same ground,) if upon a survey, the tract shall be found to contain, even in an important degree, more or less, than the quantity talked of (indeed) at the time, but forming no part of the essence of the contract ? I need not state the consequence !
But, it is said to be immoral for a man to pay, and another to receive money for more land than the pne parts with, and the other gets.
However it may be wished, that mankind should be brought in their contracts to that pure system of ethics, finely described by moral writers, yet the decision of a Court of Equity on that system, where there is no fraud, hut the ground of relief is mistake'of the parties, would, in the present state of society, produce more evil than good.
*284 To illustrate what I mean:
Tully, in his book of Offices, determines, that a com merchant arriving at Rhodes at a time of deep distress, knowing that a large supply is on the way, ought to disclose that fact to the Islanders, so important to them to be informed of, and not by concealing it, get a much higher price for his own cargo; and he gives strong reasons for his opinion. But, is there a single instance of a merchant who ever pursued that system ? Or, of a Court of Equity setting aside his sale, because he did not? I believe neither; and, that this Court ought not to make a precedent of the sort, in the present state of things.
Uniformity in the decisions of this Court, is all important. We have, however, progressed but little from the commencement of our existence; and, *if in any instance, we should recently discover a mistake in a former decision, we should surely correct it, and not let the error go forth to our citizens, as a governing rule of their conduct. *
I have before shewn, that the former decision, and what I propose in this, will stand very well together, from the difference in the contracts. Nor, will there be. any inconsistency even in appearance. For, the former entry in our book does not extend the principle to such a contract as the present; and, a statement of the grounds of this decree, will distinguish it Clearly from the other ease. -
Upon the whole, as to the merits, I am for affirming the decree.
As to the 61. 13s. 4d. the arrears of the land tax, it appears that the appellants have paid it, and ought to have it refunded; but, it is not clear whether the appellees or the Sheriff, who may have received it twice, of which Bell’s testimony gives a suspicion. It will be open to a recovery from the proper person, (if not paid without contest;) and ought not to be allowed as a discount at present, - The decree was as-follows:
“ That in all cases of contracts for the sale of lands by. a specific number of acres, the parties are entitled to com.pensation for a deficiency or excess in that quantity, beyond what may reasonably be imputed to small errors from variations of instruments or otherwise; the estimate being supposed to be made from mistake in the parties; and are not precluded in Equity from enquiry into what was the real contract, by the words more or less inserted in the deed of *285 conveyance. * . But, where the real contract is to sell a tract of land, as it may contain, more or less, fully Understood to be so, the purchaser takes the tract at the risque of gain or loss, by deficiency or excess in the number of acres contemplated; and neither can resort to the other, for compensation on the ground of either event.† And this having been the real contract between the parties in the present case, there is no error in the said decree. Therefore, &e.
Decree affirmed.

[* Fonb. Treat. Eq. B. 1, ch. 2 § 8; ch. 3, § 4.]

[* For a statement of this case, see 2, H, & M, (1) p. 173.]

[*In the recent case of Tucker v. Cocke et al. 2 Rand. 67, Green, J. in delivering the Court’s opinion, said, that the grounds of the judgment in that case, [Quesnel v. Woodlief] are so uncertain, some of the judges who de» eided it, the reporter, and the counsel on both sides, who argued the cause, differing so materially in their statements of the reasons upon which the judgment was founded, that it cannot be considered an obligatory authority., See the case of Tucker v. Cocke et al.]

[* Roane J. acc. 1 Munf. 199,]

[* Nelson v. Carrington, ex'r. of Bunwell, et al. 4 Munf. 332, 340; Hull v. Cunningham's ex'r. 1 Munf. 330.]

[† Grantland v.Wight 2 Munf 179; Fleet v. Hawkins, 6 Munf, 188; Pendleton v. Stuart, cited by Roane, J. 1 Munf 336; Tucker v. Cocke, et al. 9 Rand. 51. If the vendor’s title deeds, shew the quantity of bind, he wilhnot be protected by the words *• more or less** Nelson v. Matthews, 2 H. & M. 164; Duvals v. Ross, 2 Munf. 290.]