TUCKER, Judge.
This is a bill brought by the executors of Pendleton, for relief and compensation for a deficiency of 160 acres of land, alleged to have been discovered on a sale made by the following agreement, drawn by the purchaser, who lived near the lands, the seller residing at a ^considerable distance from them, and the contract being made at the house of the tatter, who shewed a patent for the lauds to one Dilliard, dated in 1736, to the buyer, and delivered him the patent as soon as the contract was made, for the purpose, it would seem, of having a deed prepared according to it.
“Memo, of an agreement between William Stewart of the county of K. G. and James Pendleton of the county of Culpeper. The said Stewart has agreed to sell to said Pendleton 1100 acres of land (more or less) adjoining said Pendleton, for the sum of ¿£330, to be paid at four equal yearly payments, the first to commence on the 25th of December, 1784. Witness our hands and seals this 30th day of September, 1783.”
The bill charges that the agreement between the parties, was that the lands should be paid for at the rate of £30 per 100 acres, and that it was, by mistake, written as above.
The answer denies that the defendant sold the land at ^30 per 100 acres, and alleges that he sold it at a fixed price; and states some explanatory circumstances which happened at the time. That hearing, afterwards; that sixty or seventy acres of the land were lost, he offered to cancel the contract, which Pendleton refused.
One witness, who was carried down to Stewart’s house by Pendleton, and was a witness to the contract, said that he was privy to the whole conversation between the parties; that he heard nothing about a deficiency of title; but always conceived Stewart was to make a good and sufficient title; and that he understood the contract to be expressed in the written agreement, which was drawn by Pendleton.
Another witness swore that he surveyed the land by Pendleton’s desire; that some of the. lines fell short, being stopt by other persons’ lines, as he was informed; and that the quantity only amounted to 940 acres, or thereabout.
Pendleton lived ten years after the contract, and nearly two years after the judgment against him for the purchase money, without applying to a court of equity for relief.
*Three points were made in the argument by the appellants’ counsel. 1. That there was a real deficiency. 2. That Pendleton was entitled to compensation for it. 3. That the bill having prayed for general relief, the chancellor, instead of dismissing it in toto, should have decreed the defendant to make a title upon payment of the money.
1. As to the first of these points. The deficiency, though suggested in the bill, is not admitted by the answer, nor absolutely denied; the defendant saying only, that “some time after the contract, he heard it said that part of the land, 60 or 70 acres, were lost, but he knows not the fact.” And Wiggenton, who made the survey privately, at the desire of Pendleton, only says, that he was stopt by other persons’ lines, as he was informed; but who those other persons were he does not say, nor are their names mentioned in the bill. Here then, is a defect of proof.
2. Had there been no such defect of proof, it does not appear that in this case the *863 plaintiff would have been entitled to compensation. The principles established by the decree in the case of Jollife v. Hite, 1 Call, 329, seem to me to be perfectly correct; and imply that the warranty tacitly annexed to every contract, that the thing bought or sold shall correspond with the representation made of it, at the time of concluding the contract between the parties, is neither waived, nor destroyed, by the insertion of the words “more or less,” in a contract for the sale of lands by a specific number of acres, if an error beyond what may reasonably be imputed to the variation of instruments, or other similar causes, be afterwards discovered. But where the real contract is to sell a tract of land, as it may contain, more or less, fully understood to be so, between the parties, those words, more or less, imply a waiver of the warranty, as to the specific quantity, on the part of the buyer, and an agreement, on the part of the seller, not to demand more than the fixt price, although, on the one hand, there should be an excess, or, on the other, a deficiency in the quantity supposed: both parties being willing to abide by such presumptive, *or probable evidence of the quantity as they were then possessed of; but, of which, neither pretends to have an accurate and perfect knowledge; and which neither insists upon, as a condition annexed to the purchase, or sale; which, in the other case, is supposed to be done, and to be reciprocal.
In this case, the contract was drawn by the purchaser, and was founded upon a proposal moving, from him, to the seller, who lived remote from the land, and possibly knew no more of it than was expressed in the patent; whilst the purchaser, whom it joined, might be presumed to have such a knowledge of it, as to enable him to form a competent judgment of its gross value, without regard to the specific quantity, which the tract might contain. The evidence which seems to have been relied on by both parties, was the patent, which being nearly fifty years old, might, as is not unusual, be supposed to comprehend a larger quantity within the lines, than was expressed in the patent. The buyer was probably induced from this circumstance to take the tract in gross, and the seller made no reserve, or condition of further compensation, in case of an excess. The answer positively denies that the sale was at a certain rate per 100 acres; and insists that it was for a fixt price. This is not contradicted by any testimony, and corresponds with the agreement drawn by the purchaser himself; and thus clearly brings the case within the latter principle established by the decree in Jollife v. Hite. Besides, the defendant states ar offer, which is not denied, made by himself to Pendleton, upon hearing that the land fell short of the quantity in the patent, to cancel the contract : which Pendleton refused; and which proves that he was not, in fact, deceived, or dissatisfied with his purchase. The purchaser lived ten years after the contract, and near two years after the judgment against him, without any attempt to obtain relief from a court of equity, for this supposed deception; and, probably, during the whole time, was enjoying the benefit of his purchase, by cultivating the lands.
*3. As to the third point, it is not suggested that the defendant had refused to make a deed for the land, pursuant to his agreement; but only such a one as Pendleton insisted on. The general relief, therefore, does not appear to have this object in contemplation; but if it be thought proper to amend the decree so far, I have no objection.
ROANE, Judge.
If the decision of this case had turned, solely, upon the written agreement of the 30th of September, 1783, I should, probably, have been of opinion, under the principle laid down by this court, in the decree in the case of Jollife v. I-lite, that the appellant was entitled to an abatement for the suggested deficiency (when proved to exist) beyond “what might be reasonably imputed to small errors from variations of instruments, or otherwise;” and this the rather, because that agreement does not profess to relate to a “ tract of 1100 acres more or less,” but to “1100 acres of land more or less.”
But the appellants, not satisfied to rest on this foundation, have asserted, in their bill, a pro rata contract; and have called on the appellee to say, whether such was not the real nature of the one in question. This enquiry, under the decision aforesaid, it was competent for the appellants to make.
The answer of the defendant, substantially responsive to the bill in this respect, refutes this idea, by stating a communication preceding the final consummation of the contract, whereby the appellants’ testator agreed to take the risque of deficiency upon himself.
It is true, Mr. Bowie states, that he was privy to the whole conversation on the subject, and heard nothing said about a deficiency ; but negative proof, unsupported by other testimony, or by circumstances, is insufficient to outweigh the evidence of the answer. The agreement itself does not come in aid; for, however it may be in point of construction and legal operation, it affords no evidence of the sense of the parties having been opposite to that relied on *in the answer; and it is worthy of remark, that the appellee has also relied on it, as operating in his favour.
Neither are there any circumstances having any favourable effect in the appellants’ favour: They are rather the other way, such as Pendleton’s contiguity to, and probable knowledge of the land, and the distant residence of the appellee from it.
I think, therefore, that the chancellor was right in the main principle of the decree; but that he ought to have decreed a title to the land, (subject to the abatement in quantity as aforesaid,) on payment of the purchase money, instead of dismissing the bill.
I take this opportunity to say, that I accord with the judge who proceeded me in his understanding of the decree in the case of Jollife v. Hite. My dissent, in that case, from the opinion of the court, arose, not from any dissent in relation to the principle as stated in the decree governing *864 this decision, and as now explained; but from my not understanding the contract, in that case, to have 'been, as understood by the majority of the court.
FLEMING, Judge.
The written agreement is so plain that it is impossible that either party could have misunderstood it. The words are express, that eleven hundred acres, more or less, were sold, without any stipulation for deficiency, or excess. Consequently, neither of the parties could have expected any allowance upon those grounds. Although eleven hundred acres are mentioned, it is manifest that those were used as terms of description, and not of warranty: for the understanding was, that one should sell and the other purchase the tract for ;£330, whatever might be the number of acres contained in it; with regard to which, each part}’ probably made his own calculation. The written language of the contract, therefore, ought to govern: for there is not the slightest evidence of the supposed stipulation for ^30 per hundred acres; nor of any fraud or concealment. On the contrary, Pendleton, the purchaser, *who ’lived adjoining the land, and therefore had a better opportunity of forming a conjecture as to the quantity, than the seller, who lived at a distance; was the writer of the contract: and, with all these advantages on his side, he has stated that the sale was of 1100 acres, more or less, without any qualification; thereby, evincing his own impression, that neither excess nor deficiency was to be compensated. It is, consequently, like the case of Jollife v. Hite; which was not inconsistent with Quesnel v. Woodlief, as the latter was a case of fraud. I am, therefore, of opinion, that the purchaser was not entitled to any deduction, from the price, on account of the deficiency; but the ap-pellee ought, on receiving the purchase money with interest and costs, to convey; and the decree, in not providing for it, was so far erroneous.
CARRINGTON, Judge.
I admit that the defendant cannot, by his answer affirming a new matter, swear himself into an interest; and that, as far as the answer, in the present case, is not responsive to the bill, it is to be disregarded, as the new matter is not supported by evidence. But, in some respects, the answer is responsive to the bill; and, to that extent, it must be contradicted by two witnesses, or one witness and strong circumstances, or it will prevail. Examine the case under that view. The bill refers to the written contract expressly; but charges, that the sale was at the rate of ;£30 per hundred acres, and that the written memorandum is not according to the actual contract. The answer, on the other hand, refers to the written agreement also, as containing the actual contract; and denies that the sale was at the rate of ¿30 per hundred acres. The parties then are at issue upon those points; and so far the answer is responsive to the bill, and must be contradicted according to the rules of evidence in equity, or it will be conclusive. But there is no such evidence. For Bowie, the only material witness for the plaintiff, says, that the contract was as it is stated in the writing drawn by Pendleton: *and, although he adds, that he always considered, that Stewart was to make a good title, he neither explains what he meant by a good title, gives any reason for the opinion, nor states any thing to have passed between the parties indicative of a contract different from the writing; or from which any fraud, or concealment, on the part of Stewart, can be inferred. Indeed, the reverse is presumable ; for, as Fendleton lived adjoining the land, he was probably better acquainted with the boundaries and the area they contained, than Stewart, who lived at a distance, and was a stranger to both. In this situation of things, the contract was made, importing, upon the face of it, that there was to be no compensation, on either side, for deficiency, or excess: for it states expressly, that the land was sold for 1100 acres, more or less, and at the fixed price of ^330. Under this view of the case, it was a mere bargain of hazard; and falls precisely within the principles laid down by the majority of the judges in Jollife v. Hite; which, as has been observed, was not inconsistent with Quesnel v. Woodlief, the latter having turned upon the fraud. The decree, therefore, is right in the main; but it ought not to have dismissed the bill, without decreeing a conveyance of the land upon payment of the purchase money, with interest and costs; and, to that extent, it should be corrected.
LYONS, President.
My sentiments upon questions of this kind were delivered at large in the case of Jollife v. Hite, 1 Call, 301. I then.thought, as I still do, that the words, more or less, standing alone, were subject to restrictions; and that when a considerable deficiency occurred, there should be relief, because it afforded evidence of mistake, on both sides; but that a small deficiency, arising from the variation of instruments or other causes, should be disregarded. In the present case, therefore, I think there should be relief; but, as the rest of the judges differ from me in opinion upon that point, although they concur that the bill ought not to have been dismissed, as the land should be conveyed upon ^payment of the purchase money and interest, the decree is to be reversed, and a conveyance directed upon those terms, agreeable to the following entry:
“The court is of opinion, that the appellants are not entitled to any deduction from the price of the land in the bill mentioned, on account of the deficiency in the quantity of eleven hundred acres expressed in the patent granted to Thomas Dilliard, referred to in the proceedings by reason of its interference with prior patents or prior better titles of others, holding lands adjoining thereto, it appearing satisfactorily to this court, from the whole evidence arising from the bill, answer and exhibits, in this cause, to have been the intention of the parties, and so fully understood between them, that the appellee only intended to sell to the testator of the appellants, his right under the said patent, to the entire tract granted thereby, as containing eleven hundred acres, more or less, not warranting it to contain any certain quantity, and *865 therefore, he was not bound to make good the deficiency of eleven hundred acres, if any such appear on a new survey; but that the appellee ought to convey the said tract of land, according to the said agreement, to the appellants, or to the person or persons entitled to the same, under the will of their testator James Pendleton, deceased, on his receiving the full amount of the purchase money due, with interest, and the costs of a suit recovered by him in the district court of Fredericksburg, against the said James Pendleton in his lifetime, for the recovery thereof, and that the said decree is erroneous in not directing such conveyance to be made on the terms aforesaid; therefore, it is decreed and ordered, that the said decree be reversed, &c.