Judge Green
delivered his opinion.
In January, 1793, Frederick Cabell, as agentfor his father, John Cabell, contracted with Roberts for 100/. worth of corn and wheat, at stipulated prices, for the use of his Iron Works in the County of Greenbrier, and executed a Bond to Roberts, in his father’s name, for the 100/. At the same time, Roberts executed his Obligation to John Cabell, to deliver 10.0/. worth of grain to him, one half as it was the other the 25th of December, 1793. In Octobei’, Cabell sold his Iron Works to Crawford, and Crawford to all Cabell’s debts in Greenbrier and neighbourhood, out of the purchase money. Roberts, having delivered a part of the grain to Cabell, agreed to deliver the balance to Crawford, and to look to him for the 100/., which Crawford agreed to pay him, but Roberts did not agree to give up Cabell’s liability. So that Crawford was Cabell’s agent to receive the balance of the *581 grain, and bound to him to pay the price of the whole to Roberts,. In October, 1793, Cabell removed to Buckingham County, where Roberts’ Administrators sued him upon his Bond in 1804, and obtained a Judgment by default. CabcM obtained an Injunction to this Judgment, on the sole ground that he did not execute the'Bond, nor know of its existence until some time after it was executed, and had intended to defend the suit at Law, and written to a Lawyer for that purpose, but not knowing the state of the suit, was not present at August Court, when a Judgment by default went against him.
In 1812, Roberts’ Administrators answered, objecting to the jurisdiction of the Court, and stating that they were informed, and believed that the Bond was executed'by Frederick Cabell, as agent for his father, for the purchase of grain, the whole or greater part of which had been delivered to Cabell, or his agents. In 1818, J. Cabell died, and the suit in Chancery being revived, his Executors filed an amended Bill, stating the substance of the original transactions as before set forth, with the addition, that only eighteen or twenty barrels of grain had been delivered under the contract to Cabell, and that Roberts had agreed to look to Crawford for the price of that, as well as for what he might afterwards deliver to him under the contract, and exonerated Cabell altogether, and that Roberts’ Bond, then exhibited, had been mislaid, and found among Frederick Cabell’s papers since John Cabell’s death. To this, Roberts’ Administrators answered as' before, denying any agreement to exonerate Cabell, or the payment by Crawford, so far as knew or believed. The County Court perpetuated, and the Chancellor dissolved the A deal of was taken, some of which was objected to. The validity of these objections need not be considered, since they do not affect the result of the cause.
Upon the evidence, if I were a juror, I should have very great doubts, hut upon the whole should probably conclude, that Roberts had delivered a considerable quantity of grain to Cabell, and perhaps the balance to Crawford, and for whatever he had delivered to both, he had been paid by Crawford. I could not otherwise account for his failure to call on Cabell within the nine or ten years he survived the period of these transactions. But, the County Court in Chancery was not the proper tribunal to determine upon these doubtful facts. They should have been submittad to a Jury, upon Cabell’s defence to the action at Law against him, or in an action by Cabell, or his Executors, against the Administrators of Roberts on his Bond. Whatever Crawford had paid Roberts, was a legal dis *582 éount against Cabell’s Bond. And if he .had not delivered the whole grain, there was no impediment to recovering satisfaction for it in a suit upon his Bond. It is not the province of a Court of Equity ..to see that justice in the abstract is done in ali possible cases, but on¿ly to lend, its aid when, from any cause, without his own default or -'■■negligence, a party cannot have jgstice do.í¡ei him in the Courts of íiáw. Nor does the circumstance,.that the discounts, or abatements, ' or damages, claimed to be set-off in Equity, arise out of a breach of the same contract, upon which the Judgment at Law is founded, .form an exception to the general rule, unless there be also some circumstance in the ease, which, without the default or negligence of the party, prevented him from availing himself of such a breach by way of defence, or in an action at Law. The cases alluded to in the argument, in which an abatement in the price of land for a deficiency in quantity, has been allowed in Equity in this Court, and in which the payment of the purchase money haslbeen suspended till some defect in the title should be supplied, form no such exception to the general rule. These have been either cases in which the pur-ehaser has sued in Equity for a specific execution where it was necessary to the relief asked to adjust the price to be paid under the contract, as in Mills v. Bell, 3 Call, 320; Chinn v. Heale, 1 Munf. 63; Grantland v. Wight, 2 Munf. 179, Nelson v. Carrington, 4 Munf. 332; or where the party had accepted a Deed, in which there was no covenant upon which he could recover compensation for the defect of title, or deficiency in the quantity of the land, as in Joliffe v. Hite, 1 Call, 301; Hull v. Cunningham, 1 Munf. 330; Humphreys v. M’Clenachan, 1 Munf. 493; Sexton v. Pickering, 3 Rand. 468; Nelson v. Matthews, 2 Hen & Munf. 164. The cases in which relief has been given in this Court to the obligor against assignees, after Judgment at Law, upon Equities against the obligee, conform to the general rule. In the leading case of Norton v. Rose, 2 Wash. 233, the Equity was inherent in the original contract, and went to the whole consideration of the obligation upon which no defence or action at Law, even as against the obligee, could be founded. In Pickett v. Morris, Ibid. 255, a legal discount was offered and rejected in the trial at Law, and tire party prevented by surprize "from putting his ease upon the Record, so as to reverse the Judgment by appeal. And in Stockton v. Cook, 3 Munf. 68, the obligor, against whom the assignee, had obtained a Judgment at Law, upon a Bond given in consideration of the purchase of land, had a conveyance from the obligees, with a covenant against incumbrances; . there was an incumbrance, and although this-was not a subject that _ could be 'discounted at Law, the obligor could have maintained an *583 action at Law against the obligees, and have recovered the full amount of the incumbrance. He was relieved in Equity against the Judgment obtained by the assignee, Judge Fleming dissenting, amongst other reasons, alleging that the remedy of the Plaintiffin Equity, (if he was entitled to any,) was against the obligees. The Bill, however, charged that the obligees were vent, which, if true, rendered the remedy at Law against them unavailing.
During the present Term, it has been held that unliquidated damages, arising out of the same contract on which the Judgment sought to be injoined was founded, cannot be set-off in Equity. Webster v. Couch, ante. p. 519.
I think the Decree of the Chancellor was right, and should be affirmed. If the Appellants should suffer any injury from this, it is not from any defect in the Law, but the consequence of their not availing themselves of their legal remedies, and of applying to an improper tribunal.