the president delivered the following opinion of this court;
The court is of opinion that, by the agreement of the 12th of July, 1794, between the appellant and Nathaniel Burwell, one of the executors of Lewis Burwell the elder, if the samé had contained no clause giving the appellant an election to sui’vey, he would have been entitled to l'elief, in'the case of the deficiency, which has appeared in the land thereby contracted to be sold ; the known law of this court being, that, in cases of a sale by the acre, l’elief is to be granted for all deficiencies not reasonably imputable to the variation of instruments, or the like ; that this principle is not departed from, but in cases of a sale by the tract, the purchaser clearly agreeing to take the hazard of all deficiencies upon himself ; and that, in the case of a sale by an executor under the will of his testator, if the agreement be in this respect equivocal, the court would be inclined to consider it a sale of the former class, and not of the latter, so as to coi’respond with his clear and acknowledged power to sell by the acre, rather than countenance the dangerous principle that executors or other fiduciary chai’acters should take upon themselves, by means of bargains of hazard, to jeopardize the interests confided to their care.
The court is farther of opinion, that this character of the agreement before us is ratified and strengthened, in relation to the appellant, by that provision thereof which expressly reserves to him the x-ight to survey.
The'court is farther of opinion, that there being no time mentioned in the contract, for the assertion of the election to survey in this case ; at the same time that that instrument has bound down the appellant to particular days, happening within a short time, in relation to concluding the bargain, taking possession of the land, and giving bonds for the purchase money thereof; the right of election aforesaid is not limited by the terms of the contract; on the principle that the expression of one thing operates to the exclusion of another; and that, consequently, no limit exists in the case before us, in relation thereto, except such as results from the *341 general principles of equity, respecting the lapse of time ; subject, however, to be affected by acts shewing an intention to abandon the right aforesaid, on the one hand, and to ratify and confirm the agreement, considered independently of the said right to elect, on the other. Whether, and how far such acts have taken place, in the case before us, will be presently more particularly considered.
The court is farther of opinion, that although the tract of land in the proceedings mentioned was liable, and was actually decreed to be sold, by the Superior Court of Chancery, in satisfaction of the mortgage therein also mentioned, yet the sale by the executors in this case having been for a full and fair price, and having also the consent and confirmation of the mortgages, or those claiming under them, there is no objection to its validity arising from the existence of’ the mortgage and decree aforesaid.
The court is farther of opinion, that as the written contract for the sale in question was signed by Nathaniel Burwell, one of the acting executors of Lewis Burwell the elder ; as the appellant was put in possession of the land by Lewis Burwell, of Mecklenburg, the other acting executor, who also manifested his assent to the sale by other acts proved in the cause ; as the said sale was recognized and ratified in writing by Lewis Burwell of Richmond, who, after the death of Nathaniel Burwell, the surviving executor of Lewis Burwell, the elder, became his executor; and was also recognized and ratified by Bdwarcl Carrington, the executor of the last mentioned Lewis Burwell, by bringing the suits, the judgments in which are now in question ; the said sale was duly made by the executors who alone acted, and were consequently authorized to make it; and that, upon the facts proved in this cause, John Page and Lewis Burwell, of Richmond, will be presumed to have renounced their right to administer the estate of Lewis Burwell the elder, as at the date of the sale in question, (if the said John Page was then in life,) which renunciation need not be shewn of record, under the decision of this court in the case of Geddy v. Butler, 3 Munf. 345.
*342 With respect to the loss of the right of election in this case, the court is of opinion that that was not determined on the 1st of August 1794 ; for that day was only given to the appellant to determine whether he would accede' to the bargain or not; nor on the 25th of December, 1794, for that day is only agreed on, as the one on which the possession of the land was to be’delivered, and the'bonds and other assurances were to be entered into: nor does the court perceive tliat the day assigned for the last payment of the consideration, necessarily determined the election, unless, at that time, the whole business had been concluded, and a right to the land made, or tendered, on the part of the appellees ; nothing being more clear, in the opinion of the court, than that, although the day of payment may have arrived, a purchaser is not bound to part with the purchase money, nor to make a final adjustment of the balance due for land purchased, unless a title is made, or tendered, agreeably to the terms of the contract. In this case, it is evident there were difficulties respecting the completion of the title, existing long after the said day of payment liad arrived, and which even yet exist, amply sufficient to have justified the appellant in the belief that he would yet b,e in time to make, that election, when the prospect of his getting a title to the land should have become less remote. As to any acts of abandonment of this right of election, on his part, none such are proved; on the contrary, he is shewn to have been in quest of a surveyor, to enable him to exercise it, in the year 1799, and perhaps before, which was not long after the last day of payment had arrived. And, as to any acts confirming the agreement as a contract of sale in gross, the court is of opinion' that none such are shewn to have taken place : no final conclusion of the business had been made ; no deed, or release of the mortgage had been tendered by the executors, or accepted by the appellant: that important circumstance,, therefore,' is wanting inthis case, which was so emphatically relied on by this court, as an act of confirmation, if not t,he only act of confirmation,in the case of Jolliffe v. Hite, 1 Call, 301. As to the mere lapse of time which took place in this easel while it is *343 probably well accounted for by the existence of the circum- * » • stances before mentioned, it is to be observed that such lapse is only permitted, in equity, to defeat an acknowledged right, on the ground of affording evidence of a presumption that . that right has been abandoned ; that it therefore never prevails when that presumption is outweighed by opposing facts or circumstances; and that, in general, a much longer time is necessary, to found such presumption on, than had elapsed in the case before us.
The court will also remark that equity is not fond of taking advantage of forfeitures arising merely from a lapse of the time specified ; and that it is the constant course of courts of equity to relieve against such forfeitures on making adequate compensation. In the case before us, while there is nothing to affect the appellant, but the lapse of a few years, under circumstances, too, which, in his opinion, might have justified his delay ; — while he has not sinned against any given day prescribed to him by the other contracting party; and who, by failing to prescribe such a day, has consented that this right should depend upon all the circumstances existing in the case ; the effect of a decision founded upon the lapse of time, in this case, would be to charge the appellant for nearly one-fifth more land than he actually got, or, in fact, contracted to purchase : — it would be to subject him to a bargain for the tract in gross, notwithstanding all the care he has taken to preserve his right to purchase by the acre ; and to set up a bargain of hazard in the case of a sale made by executors, too, in preference to a fair and certain sale by the quantity. As to the objection, that it was unfair and illegal for the appellant to make this election, after he had, by an experimental survey, in some degree ascertained the quantity of land, the court is of opinion, that a right to this, is inferable from the mere circumstance that time was given him to make the election. It could never be contended that, in judging concerning the exercise of that right, he would have been prohibited from viewing, or stepping off the land, for example : and those modes of ascertainment differ only in the degree of certainty from an experimental *344 survey. In principle there is no difference. Indeed, if a given- tract of land were of a square and regular form, it would not be too much to assert, that nearly as much certainty might be obtained, in relation to its quantity, by stepping off the same, as by an actúa! survey: — there is, therefore, nothing in the objection, independently of the considetion that the appellees had it in their power, before the sale, to have taken the same precaution, and, consequently, to have ensured themselves from any risk, or loss, arising from this conduct of the appellant.
With respect to the objection that the parties had Fontaine's survey before them, at the time of the contract; and that the appellant is remunerated, for the loss of the highland, by the excess found by Fox's survey, to exist in the low grounds; — the court is of opinion, that the former fact is not proved in the cause; and, consequently, that the inference predicated on it falls to the ground. But if that fact had been proved, the case of Nelson v. Matthews, in this court, 2 H. & M. 164, is a direct authority, that if a deficiency shall be found to exist, in the case of a sale, unattended by any particular circumstances, the average value of the whole tract is to form the rule, without regard to the circumstance that the deficiency was in this or that description of the land contained in the tract: and whatever may be the fact, as to the relative value of the high and low grounds contained in the tract in question, under the contradictory and conflicting testimony contained in the cause, (to say nothing of the act of frauds, as applying to the subject,) it is not shewn what the appellant’s own ideas on that subject were at the time of the contract, had Fontaine's survey been even then before him.
As to the pretence, that the delay on the part of the appellant may have subjected Nathaniel Burwell, the executor, to a devastavit, that is neither proved in the cause, nor, if proved, would it be important. He undertook to know, and -to abide by the true construction of the rights of the appellant, "in regard to the premises; and it is not for him to complain of a delay which, if it was not produced, in *345 part, by his own acts, might have been put an end to, by his exhibiting to the appellant a title to the land, and demanding a conclusion of the whole business respecting it.
Upon the whole, the court reverses the decree of the court of chancery ; and the following is to be entered as the decree of this court.
“ It is ordered and decreed that the injunction be made perpetual; and that the appellee Nathaniel Burwell, administrator de bonis non of Lewis Burwell the elder, out of the assets in his hands yet unadministered, (1.) pay to the appellant so much of the sum of 1500/. 14s. 10d., as shall remain after deducting the judgments enjoined, with interest on the whole, or any part thereof, from the time the appellant shall appear to have been in advance ; the amount to be ascertained under the direction of the court of chancery and it is ordered and decreed that the appellant have leave to make the representatives of Lewis Burwell the elder, and the representatives of Robert Cary is" Co., (the mortgagees of the premises,) parties, for the purpose of obtaining a title to the land purchased of the executors of the said Lewis Bur-well the elder, and a release of the mortgage made to the said Robert Cary is" Co. by the said Lewis Burwell in his lifetime.

 Note. Bdward Carrington departed this life while this appeal was pending, and Nathaniel Burwell, the administrator de bonis non, was made a party by scire facias.