Ijrockexb ií.ough, J.
It was contended by the appellants’ counsel, that the grant of administration on the estate of James P. Thompson was merely void, because *428 it does not appear that the executors appointed by the will had ever renounced. I think the objection cannot prevail. The statute declares that “if the executors named in any will shall refuse the executorship, or being required to give security shall all refuse or fail to give the same, in either case the court may grant a certificate for obtaining letters of administration with the will annexed.” It must be recollected that the case is not now before a court of probat, which might revoke an administration improperly granted, and make a due and regular appointment. It is in a court of equity, which cannot in a collateral way set aside or disregard a grant of administration, any more than it can reverse a judgment of a court of law. Nor is the question as 'to the validity of this grant, made by the pleadings in the case. If such had been the issue, it might have been in the power of the appellee to shew that a renunciation of the executorship had been made, either on the record, (which, however, was not necessary; Geddy &c. v. Butler and wife, 3 Munf. 345. Nelson v. Carrington &c. 4 Munf. 332.) or by declarations made in pais, or by circumstances leading to the same conclusion: or he might have shewn that the executors had refused or failed to give security, having been required to do so, which is tantamount to a renunciation, and justifies the court of probat in granting administration with the will annexed.
The next question is, whether the administrator with the will annexed had any power under this will to malee sale of the land in Burk's garden (which the testator devised to his two children) for the purpose of paying the debts of the deceased, and whether the sale made to Meek was conformable with the power conferred by the will. In the first clause of the will the testator desires his funeral expenses and all his just debts to be paid. This clause confers no power on the executors to sell any part of the land. It probably operated as a charge *429 on the whole land, and the case of Trent v. Trent’s ex’x &c. Gilm. 174. might render it questionable whether that charge is retracted by the subsequent selection of a part of the land to be sold for the purpose. It is not necessary, however, to advert to that clause for any other purpose than to shew that it was the primary wish of the testator that his debts should be paid, even though his land might be required to defray them. It is the proper construction of the second clause which is to determine the decision of the subject now under consideration. The testator, after directing that certain parcels of land, lying around the land which he had previously disposed of, should be sold by his executors, who should apply the proceeds thereof to the payment of his debts, and after devising the tract on which he lived, including the Blue spring, Cherry tree field, and Slime’s lease, to his two children, and making other provisions for the same purpose, says,—“I further order, if the lands I now hold, the land and negro I have directed to be sold, be not sufficient for the payment of my debts, that there be a part the least in value of the tract 1 have bequeathed to my son and daughter, be sold to fully satisfy and pay all my just debts.” The executor (or administrator with the will annexed) was bound In the first place to apply the whole of the personal estate to the payment of the testator’s debts: if that should not be sufficient, he is expressly empowered by the will to sell certain parcels of land; and if they should not be sufficient, the last clause which I have quoted, by a necessary implication, gives him power to sell the whole of the land devised to his children. For although he did not expect that the whole would be necessary to pay his debts, and ho restricts the executor to the sale of the part the least valuable, yet it is to be sold so as fully to pay and satisfy all his just debts. The executor, then, is expressly empowered to sell all but the last most valuable acre or minute part of the land; and as he was fully to satisfy the *430 debts, he is by implication authorized to sell even that last acre-
But the question recurs, has the administrator, in the present case, fairly and with disci'etion exercised the powers conferred on him ? I think he has not. He has failed to appropriate the whole of the personal assets to the payment of the debts ; he has failed to sell the parcels of land which were specifically appropriated for that purpose; and he has, with most indecent haste, sold, not a part only, and that the least valuable, of the Blue spring and Cherry tree field, but he has sold the whole of that land, within two or three months after he qualified as administrator, and before he could know that it was necessary to do so. He appears to have been stimulated to that sale for the purpose of paying off some of his own debts. A considerable part of the purchase money was appropriated to the discharge of a debt due from himself to Francis Smith, for which his own lands were bound; and it appears from the evidence of Philip Greever, that the appellee Meek, the purchaser, was the creditor of the administrator, to the extent of one thousand dollars,' one fourth of the purchase money, and that debt was applied to the payment of it. Thus the greater part, I think about three fourths, of the proceeds of the testator’s land, was applied to the payment of the individual debts of the administrator. Meek the purchaser was not only apprized of the before mentioned restriction on the power of the executors to sell the whole land, but he was actually cognizant of, if he did not encourage, the breach of trust committed by the administrator. I am of opinion that the chancellor erred in dismissing the bill as to Meek, and in quieting his title to the land. But yet I am unwilling that this court should unconditionally direct the sale to be set aside. ■ The case as to the administrator is yet in progress; the settlement of his accounts is not yet completed ; the chancellor has not yet decreed that *431 the parcels of land before mentioned shall be sold and brought into account. When these things are done, and the whole subject is before him, he will be better able to decide whether it was necessary to sell the whole, or any part, of the tract called the Blue spring and Cherry tree field; and if it was, whether, from the evidence taken or to be taken, it is best for the interest of the devisees that the sale already made shall be set aside, and a new sale directed either of a part or the whole, or to confirm and establish the sale already-made. I am for reversing the decree with costs, and remanding the cause for further proceedings.
Cabell, J. concurred.
Care, J.
The first point contended for by the counsel for the appellants was, that the administration granted to William P. Thompson was wholly void, because the will having appointed executors, there was no proof in the record that they had renounced. In the first place, this is a question not raised by the bill; for that is predicated on the idea of an administration which, however irregularly granted, enabled the administrator to act. It is filed to set aside the sale of the lands, not because sold by one who was not administrator, but by an administrator who violated, his duty in the manner of the sale, and exceeded the power given by the will. It rests on the ground that the legal title has pa.ssed by the sale, which could not be, if the vendor was no administrator : and if the legal title did not pass, it is in the plaintiffs, who in that case can want no aid of equity. But is this a void administration ? Can wc so decide ? The court which appointed the administrator is the tribunal appointed by law for that purpose; the case was regularly before them, and their appointment has never been reversed, never appealed from. Again, in Geddy &c. v. Butler and wife, 3 Munf. 345. and Nelson v. Carrington *432 8fc. 4 Munf. 332. we are told that the renunciation of executors need not be by matter of record, but may be proved by declarations in pais, or presumed from circumstances ; and in Burnley's adm'r v. Duke &c. 1 Rand. 108. it is decided that such renunciation may be presumed, from the facts of an'executor’s failing to qualify, and joining another (who had qualified as administrator) in a sale of land directed by the will to be sold, such joining being not in his character of executor, but as heir of the testator. Must we not then take it for granted, that the court making this appointment had before them either such proofs of parol declarations as shewed the renunciation, or such circumstances as justified the presumption ? But these would not be spread upon the record, as there was no opposition, that we hear of, tó the appointment. The next question argued was, whether the whole real estate of the testator was charged with the payment of his debts, and if so, whether it was a mere charge, or amounted to a power given to the executors to sell.? I think it was a charge upon the whole. The first clause in the will is, '“I desire that m3' funeral expenses, and all my just debts be paid.” This, in the commencement of a will, has often been decided to be a charge on the realty. Trent v. Trent's ex'x &c. Gilm. 174. Clarke and wife v. Buck, 1 Leigh 487. But the will does not stop here. The next clause directs, that the lands lying around the land he had sold to different persons, in Burk's garden, be sold by his executors to the best advantage, and the money arising therefrom to be appropriated to the payment of his debts. He then devises certain lands described, to his son and daughter and wife, and divides his slaves between them. But his debts still weighed upon his mind, and he adds, “ I order, if necessary for the payment of my debts, that Deter a negro boy &c. be sold for that purpose. Item, I further order, that if the lands and negro I have directed *433 to be sold be not sufficient for the payment of my debts, that there be a part, the least in value, of the tract I have bequeathed to my son and daughter, sold, to fully satisfy a,nd pay all my just debts.’1’ Here we see again emphalically declared his purpose to fully pay and satisfy all his just debts; and as a means of fulfilling this purpose, his executors are directed (in addition to the other lands and slave) to sell a part of the land devised to his children—“ a part least in value”—by which I suppose he meant that so much as would be sufficient to pay the balance of his debts should be taken off, in such way as would take the land least valuable and least affect the value of the remaining land. This shews that he did not expect it would require a sale of the whole land to pay the debts. But that does not vary the main and fixed purpose of his mind, which was that all his debts should be fully paid and satisfied, and that so much of this land as would effect this purpose should be sold; and if it took the whole, it is clear to me that the whole should be sold, and that his executors had. under this clause a power to sell the whole, they being the agents named by him for such sale. It is equally clear, that this power devolved by our act upon the administrator. But yet I think that in making these sales, and especially in the order and succession of sale, the directions of the testator should have been strictly followed; that the administrator should have sold first the slips of land, then the slave, and if these did not suffice to discharge the debts, then so much of the other tracts as would. The administrator instead of this has sold at once the whole of the land devised by the testator to his children. This I think gave just cause to the devisees to file their bill, upon the ground that the state of the funds did not require a sale of the whole or of any part; and to call for a settlement of the administration in order to shew this: and if it is shewn, the sale I think should be set aside, as the purchaser was bound to know the power under *434 which the administrator sold, and is therefore a parcha- ... r ser with full notice. The chancellor however has dismissed the bill as to this purchaser, and quieted his ti-tie: while the accounts (as those of my brethren who understand them better than I do, tell me) are still in such a state as to leave it quite uncertain whether the whole, or what portion, of the land need have been sold. Upon this ground I agree that the decree should be reversed, and the cause sent back, and reinstated as to Meek, to be proceeded in according to the principles declared.
Brooke, J.
I think the whole of the testator’s land was subjected to the payment of his debts by his will, if necessary for that object, in the event that the personal estate and the particular portions of the land directed by the will first to be sold were inadequate; but before that was ascertained by a full account of the assets, and the application of the sales of these particular portions designated by the will, it was error to sell the whole. The bill therefore ought not to have been dismissed as to the appellee until these matters were inquired into, and it was found that the sale of the whole was necessary. As to the objection that the administration was void, it not appearing that the executors named in the will renounced it,—if that be so, it was for another forum, and not a court of equity, to inquire into it. It was not necessary their renunciation should appear on the record of the court granting the administration, as has been decided by this court; and if it were, we could not reverse the decision of the court of probat by a bill in equity. The objection that the administrator was in his own right a debtor to Meek the purchaser of a portion of the land, is no objection to the sale of the land to him, if the sale was a beneficial sale to the estate; it may have enhanced the price; which ought to be inquired into before the sale is set *435 aside, as it appears that the administrator is solvent, and a creditor of the estate. I concur, therefore, in the decree reversing the deei'ee of the chancellor.
Tuckeh, P.
I am of opinion that the bill in this case was erroneously dismissed as to the appellant Meek, and that the cause should go back for further proceedings, until, by a settlement of the administration account, and a thorough investigation of the transactions of the administrator, it shall be definitively ascertained whether any, and what part, of the property sold by him to the appellee was necessary to be disposed of for payment of the debts of the testator. While that settlement was only in progress, it could not have been proper to dismiss the bill as to Meek. The land he purchased was only chargeable in the event of the deficiency of the personal fund, and certain portions of real estate which were directed to be first sold for the payment of debts. The sale of that land to him was, therefore, only justifiable in case of such deficiency, and he ought not to have been quieted in his possession while the ascertainment of that fact was only in fieri. As the account in its present state is liable to be varied in its progress to final adjustment by the decree of the court, it could not properly be regarded as a sure foundation for the action of the court in relation to Meek, even if the presumptions it affords in support of the necessity of a sale of the whole of the lands of the infants, were stronger than they are. For my own part, from the examination I have been enabled to make of the confused mass of vouchers and depositions, and of the inconclusive report of the commissioner, I have been led to the conjecture that a sale of the whole land was not rendered necessary by the circumstances of the estate, and of course that the bill ought not to have been in all things dismissed as to Meek. The case should go back for further examination, and if the sale should *436 prove to have been unnecessary, it should be set aside, unless it should appear to have been an advantageous in which case it should be at the option of the devisees to confirm it.
In giving this opinion, it is proper to remark that it rests in no degree on the alleged nullity of the grant of administration, nor on the supposition that there is no charge upon the lands of the children created by the will.
With respect to the first, it is not to be denied that an administration granted where there is an executor, without a refusal of the executorship by him, is by the authorities declared to be void, or a nullity. But how, and before what tribunal, is it a nullity ? Before the court of probat indeed it is so completely void, that upon the production of the will, letters testamentary may be granted to the executor at once, without the repeal of the letters of administration. But the question here is, whether in this collateral way, and before another forum, this sentence of the court of probat can be assailed and pronounced to be a nullity. If so, it presents the anomaly, that the sentence^ of a court which stands unreversed may be set aside by a co-ordinate tribunal,—not on the ground of matter extrinsic, but upon the ground of error in the proceeding of the court. In other words the co-ordinate tribunal would be converted into an appellate court, to review and reverse the decision of the court of probat. This surely never has been deemed even within the ample powers of a court of equity. For the grant of administration by the court of probat is a judicial act, and as such must be conclusive on all other courts, until reversed by appeal or revoked by that court itself. In the case of Allen v. Dundas, 3 T. R. 125. where a debtor had made payments to’ an executor who had obtained probat of a forged will, those payments were held to discharge him. And Buller, J. said, he was clearly of opinion that the *437 granting probat was a judicial act; that it was conclusive until repealed, and that no court oí common law could admit evidence to impeach it. Yet the case of a forged will is one of those in which the probat is considered void ah initio. See also 1 Ld. Raym. 405. and Phil, on Evid. 245. 24G. where it is said that “the sentence of the ecclesiastical court, pronounced in the exercise of this their exclusive jurisdiction in the probat of wills and granting administrations, is so binding on the temporal courts as to be conclusive evidence of the right directly determined. It is conclusive of the same matter coming incidentally into question in a civil case in another court.” With respect to the cases in our own courts, I content myself with referring to what has been said by my brother Carr.
With respect to the question of charge, I think it quite clear that there is an express charge upon the lands sold to Meek, in case of the deficiency of the other funds. Whether that charge would cover the whole or extend only to part of the tracts devised to the son and daughter, it might be premature to decide, as it may happen that less than the whole will suffice. I shall therefore give no opinion upon the point, but shall conclude with the remark, that as there is here an express authority to sell in case a sale should become necessary for payment of debts, the executor (and, as he did not qualify, the administrator under our statute,) was empowered to perform that duty.
I am of opinion to reverse the decree, and send the cause back for further proceedings.