TYLER, J.
On the first day of November, 1819, William D. Taylor, being indebted to James M. Morris in the sum of 85,404 48, executed a deed of trust on a tract of land and twenty-six slaves, and their increase, to secure said debt; and on the 21st of February, 1822, in part discharge of said debt, he paid to said Morris £1,444 Is. lid., which sum the said Taylor informed Morris at the time of payment was derived by him from the funds of the estate of Zachariah Burnley, dec’d, (of which estate the said Taylor was the administrator de bonis non.) John Darracott and James Madison, who were the sureties of Taylor as administrator de bonis non aforesaid, being liable for this act of the administrator, if by said payment he, the said Taylor, had committed a devastavit, agreed to pay Morris the balance of the debt, if he would assign to them the security provided by said deed, which he consented to, and thereupon executed, on the 10th of December, 1822, the assignment exhibited in this suit. It further appears, by the bill of the complainants, that this *assignment was made an exhibit in this cause on the 23d of December, 1826.
Various proceedings were had in the cause, which we deem unnecessary to notice, with the exception, that a decree pronounced in the cause on the 9th of October, 1832, was reversed by the Court of Appeals on the 12th of May, 1843, dismissing the bill as to certain parties, adjudging that William D. Taylor and his securities on the administration bond were liable for the amount of assets received by said Taylor of Alexander Shepherd’s representative and Hardin Burnley’s representative, together with any other assets of Zachariah Burnlej’ which came to the hands of said William D. Taylor, and leave was given the complainants to amend their bill, and to make any person a party who had improperly received from said Taylor the assets of said Zachariah Burnley’s estate.
On the 25th day of October, 1843, this decree was entered in the Circuit Superior Court of Law and Chancery for the county of Essex, and leave then given, pursuant to-the decree of the Court of Appeals, to make new parties. No process, however, was issued to bring in these new parties for more than three years after this leave was given. On the 12th of November, 1846, it appears that subpoenas were issued against Overton and J P. Taylor as executor of James M. Morris, which were executed on J. P. Taylor on the 1st of December, 1846. The date of service on Overton does not appear on the record. On the 12th of April, 1850, a decree was rendered in the court below, declaring the liability of Morris’ estate for the amount received by him of Wm. D. Taylor, on the failure of the complainants, to realize payments from the said Taylor and his sureties. Erom which decree the representative of Morris appealed.
Thus it appears that more than twenty years elapsed after the complainants were fully apprised of the act of Morris which is the subject of their complaint in this suit, and that nearly twenty-five years had elapsed *since the act complained of before the amended bill was filed in this suit making Morris’ representatives parties, and there is no reason assigned in the record for this delay. Although the evidence may be sufficient to hold Morris accountable as a constructive trustee, still that no fraudulent purpose existed is not controverted. He surrendered the most ample security with a desire to protect the securities of Taylor from loss, and the motive to perpetrate a fraud did not exist. If, under such circumstances, the complainants slept on their rights nearly twenty-five-years after the act complained, of, and upwards of twenty after full knowledge of the act, during which term Morris had died and all means of recourse against others were lost to Morris’ estate, there can be no reason why this court should overstep the general rule in equity to make the case an exception. The decree must be reversed.
*814 THOMPSON, J., and FIELD, P., concurred.
DECREE.
The court is of opinion, that so much of the decree of the 12th of April, 1850, which is appealed from as declares the liability of the estate of James M. Morris to the complainants on account of the assets of Zachariah Burnley’s estate received by him from Vm. D. Taylor, his adm’r de bonis non, on the failure of the complainants to realize payment from said Taylor and his sureties in his official bond, is erroneous. Therefore, it is decreed and ordered, that the same be reversed and 'annulled, and that the appellees pay unto the appellants the costs by them expended in prosecuting- their appeal aforesaid here; and this court, proceeding to render such decree as the court below ought to have rendered, it is decreed and ordered, that the bill of the complainants be dismissed as to the representatives of J. M. Morris, with costs.
On a subsequent day of the term, Griswold, counsel *for the appellee, by the leave of the court, filed a petition for a re-hearing, containing an elaborate argument of all the questions arising in the cause. He argued:
That the appellees ought not to be barred by the failure to prosecute their claims against Morris’ estate, because his liability was collateral and contingent, and could not have been enforced, until it was ascertained that they could not be satisfied out of Taylor’s estate; that lapse of time does not operate to protect against a collateral liability, so long as it remains collateral and begins to run, in favor of one collaterally liable, only from the time the liability becomes direct, by the failure of the party principally liable, to meet and discharge it. Roberts v. Colvin, 3 Grat. 358. That there was no case to be found where lapse of time was held to bar recovery against a party collaterally liable, where the plaintiff had diligently prosecuted the party directly and principally liable. That here, from 1822 to 1846, the complainants had diligently prosecuted their claims against Taylor and his sureties. These principles were recognized by the act of Assembly of March 8th, 1826; Sess. Acts, 1826, p. 24; and the Code of Virginia, ch. 149, | 6, p. 591; Coolius v. Peyton, 1 Grat. 431. That even if the law were otherwise, there had been no laches on the part of the appellees. That lapse of time is permitted to defeat a legal right only on the ground of affording evidence, evincing a presumption that the claim has been satisfied or abandoned, and never prevails, where the presumption is rebutted; Nelson v. Carrington, 4 Munf. 343; or in a court of equity, unless the plaintiffs have been so negligent, that, by reason of their negligence, there can no longer be a safe determination of the controversy, and their adversaries would be exposed to the danger of injustice from loss of evidence. Smith v. Thompson, 7 Grat. 112; 2 Story’s Equity, § 1520.
That, in October, 1832, the decree of the Circuit Court of Essex discharged Taylor and his sureties from all liability for these assets, and charged them upon the estates of Pendleton and Shepherd, which were abundantly *able to pay. This decree extinguished Morris’ liability; and, while it remained unreversed, the ap-pellees had no claim which they could enforce against Morris. If they had brought suit against him, he could have defended it by setting up the decree of 1832, unreversed and still pending in the Court of Appeals. After that decree was reversed, the delay in filing the amended bill was fully accounted for by the necessity of ascertaining the state of parties, who were widely scattered, and many of whom had .died during the pendency of the appeal. That the fact that Morris intended no fraud, made no difference. “Every person, ’who acquires personal assets by a breach of trust or dev-astavit in the executor, is responsible to those who are entitled under the will, if he be a party to the breach of trust. ’ ’ Hill v. Simpson, 7 Vesey, 167; McLeod v. Dummond, 17 Vesey, 167; Andrews v. Wigley, 4 Brown Ch. R. 133, n. 11. The arrangement between Morris and Madison and Darracott could not affect the rights of the legatees, who were not parties to it.