# CHARLESTOWN.

## McCoy v. Bassett *et al.*

Submitted June 17, 1885.—Decided September 26, 1885.

1. Where there is a sale of land by the acre, a right of survey exists
   whether expressly reserved or not ; and if no time is limited for
   making the survey, it may be made at any time before the whole
   business is closed between the parties.   (p. 575.)

2. Where a contract was made for sale of a boundary of land set out
   therein for $5.00 per acre providing for the terms of the payment
   and giving immediate possession of the land, and the bill filed
   for the specific performance of the contract alleged the making
   thereof, the price per acre to be paid and the terms of payment,
   and that by survey made by plaintiff it amounted to a specified
   number of acres, and alleging the failure to pay the purchase-
   money, and praying a specific performance, HELD :

The bill is sufficient and demurrer thereto was properly over-
ruled. (p. 575.)

3. Although the record shows, that the defendants were entitled to
an abatement amounting to $41.25, yet, as that is not sufficient to
give this Court jurisdiction, the cause will not be reversed for
that reason, but, as the Court has jurisdiction on other grounds,
the decree will be corrected and affirmed. (p. 576.)

4. Where by consent of the vendor the vendee sold a portion of land
to a third party with the understanding that, if he paid for it
to the original vendor at the price he sold it for, the deed should
be made to him, and he fails to perform the contract, no abate-
ment should be allowed on this ground. (p. 576.)

The facts of the case are fully stated in the opinion of
the Court:

*G. H. Umstead* and *M. R. Crouse* for appellant.

*J. M. McCoy* and *T. P. Jacobs* for appellee.

JOHNSON, PRESIDENT: ·

Charles P. McCoy in December, 1882, filed his bill in the
circuit court of Wetzel county, against Aaron Bassett, Thomas
Cunningham and Francis M. Strait, for the specific perform-
ance of a contract for the sale of land, dated January 15, 1879.
The contract was signed and sealed by all said parties and wit-
nessed, that Charles P. McCoy had sold the defendants a certain
tract of land by metes and bounds, setting them out, and con-
taining an unknown number of acres "to be ascertained by
survey," for the sum of $5.00 per acre, to be paid as follows:
"$100.00 on or before the first day of May, 1879, and the
balance of the purchase-money to be paid in three equal an-
nual payments with interest at the rate of six *per cent. per
annum* from the first day of May, 1879, till paid." Posses-
sion was at once given by the terms of the contract. The
bill set forth the contract, and that, shortly after it was made,
the plaintiff caused a survey to be made of said tract of land,
and it was ascertained to contain 138 acres and eighty-five
poles; that he had received only $100.00, and the balance of
the purchase-money was due and unpaid; that the defen-
dants were in quiet and peaceable possession of the land;
that he had executed a deed with general warranty for said

land and files the same and prayed a specific performance of the contract, and a sale of the land, if necessary to pay the purchase-money; and for general relief.

The defendants demurred to the bill on the following grounds: First.—The bill does not allege that defendants were informed of the number of acres the tract contained. Second.—The bill does not state when the survey was made. Third.—It does not state demand for payment of balance of purchase-money. Fourth.—It does not state, that deed was ever tendered. Fifth.—It does not state amount due. Sixth. —Being a sale by the acre it was the duty of McCoy to survey, and he must do this before the amount can be ascertained, and demand must be made before balance is due. The court overruled the demurrer to the bill. Bassett filed his separate answer, in which he claims, that he was the purchaser of the land and that Cunningham and Strait were his sureties. He avers defects in the title to a part of the land; also that plaintiff never informed him that he had surveyed the land, nor did he inform him of the number of acres the tract contained. He denies, that plaintiff had the land surveyed. He avers, that some time in the year 1880 the plaintiff with the consent of this defendant sold fifty-one acres of said land to one Lot Martin and agreed to take Martin for it and relieve him as to so much, and under said agreement he let Martin have possession of the said fifty-one acres. He avers the payment of not only the $100.00 admitted in the bill, but $94.50 more, which plaintiff accepted on the remainder of the land after Martin's fifty-one acres should be taken out, and avers that the boundaries in the deed tendered are different from the contract, &c.

Cunningham and Strait jointly answered the bill. In their answer they also say the land was bought by Bassett alone, and they were his sureties.

To these several answers the plaintiff replied generally.

An order of survey was entered, which was returned and showed that the tract of land contained 124 acres and thirty-eight poles. The report further shows, that the land claimed by the defendants as "school lands" was 8 41-80 acres, and that the land sold to Lot Martin, included the "school land" and was 51 55-160 acres. After the contract had been made

to the three defendants on May 28, 1880, the following con-
tract was executed :

"Articles of an agreement entered into by and between
    Charles P. McCoy, of the first part, of Sistersville, West
    Virginia, and Lot Martin and Frank Strait and Aaron Bas-
    sett and ———, of Wetzel county and State aforesaid :

    "Whereas, the said Charles P. McCoy sold to Aaron Bas-
sett and others part of a certain tract of land lying on or near
Crow's run in Wetzel county on January 15, 1879, at the rate
of $5.00 per acree, to be paid as follows: $100.00 on May 1,
1879, and the balance of the purchase-money to be paid in
three equal annual instalments, with interest at the rate of
six *per cent. per annum* from May 1, 1879 : Now, said Aaron
Bassett has agreed to sell unto said Lot Martin a part of said
tract at the rate of $5.00 per acre, as mentioned in his pur-
chase of said McCoy, all the land enclosed in the following
boundaries : Beginning at a pine, a corner in said Strait's
land; thence S. 7° E. — poles to a run, "crossing" said line
near Martin & Lowry's saw mill; thence up said run to the
forks; thence up the right hand fork to the forks; thence
up the left hand fork with its meanders; thence toward
the Cunningham line near Metoll's house; thence ———
poles N. 37° west along Cunningham's line to a hickory
corner; thence along the division line run by John Low,
south 59 west 82 poles to a white oak in line to a corner to
said Strait's ; thence west 20 poles to said beginning, the area
to be ascertained by survey.   It is agreed that if said Lot
Martin pays to said McCoy the said $5.00 per acre as stipu-
lated by Aaron Bassett, Frank Strait and Thomas Cunning-
ham, then the deed is to be made by said McCoy to Lot Mar-
tin instead of Aaron Bassett, and said Bassett, Strait and
Cunningham are to be released from the obligation to pay
for said land paid for by Lot Martin.   The said Frank Strait
and ——— agree to secure to said McCoy the payment of the
purchase-money for said land.

    "Witness the following signatures and seals, May 28, 1880.
                        "Charles P. McCoy, [seal.]
                        "Lot Martin,        [seal.]
                                            "[seal.]
                                            "[seal.]
                                            "[seal.]"

In the transcript these three last seals were omitted and were supplied by agreement of counsel. On January 5, 1883, the plaintiff wrote the following letter to the defendant Bassett:

SISTERSVILLE, January 5, 1883.

"Mr. AARON BASSETT:

"DEAR SIR :—Two letters I have got of yours, but neither of them in answer to mine sent you last November. I gave the papers to Mr. Furnell, at the last term of the Wetzel circuit court, to calculate and tell me how many acres you would have and how many Lot Martin would get. I have not heard from him since so I can not tell you how much is due on the land I sold you. But I am in a great need of the money. I expect to meet Mr. Furnell at the office of McCoy & Jacobs, in New Martinsville, the 12th day of this month, and then I can tell more about our matters. The mails have been so irregular is the reason I did not answer your first letter, and I could not tell you until I heard from Mr. Furnell. I wrote to Mr. Furnell last November to send me the plats, &c., but they have not come to hand yet. I remain your friend, &c.

"CHARLES P. McCoy."

McCoy had the fifty-one acres surveyed for Martin and put him in possession of it; and McCoy and Bassett were both present, when the survey was made. It was the understanding, that at the time the land was sold to Lot Martin, there were $100.00 then due, which Martin was to pay. Martin did pay much more than that, but he had bought other land from McCoy before that, which adjoins the fifty-one acres. There is much said in the depositions about the sale to Lot Martin, and while neither Strait nor Cunningham knew of the sale at the time it was made, yet both in their depositions say they are willing for him to have the fifty-one acres.

On September 22, 1883, the court rendered a decree approving the report of the surveyor reciting that the survey " was accepted by the plaintiff and defendants as correct, that the quantity of land sold defendants by complainant amounts to 124 acres and one rood," and also recites the boundaries ; and further, " the court being of opinion that for anything alleged or proved by the defendants under the circumstances of the case " the contract ought to be specifically enforced, and ascertains, that the amount of the pur

chase-money due is $583.47 on that day, "allowing all pay-ments and deductions," and unless paid within thirty days by defendants, commissioners then appointed were directed to sell the same for the payment thereof, and ordering the plaintiff, before he could have any benefit under the decree, to execute and file with the papers of the cause a deed conveying to the defendants by metes and bounds as set out in the report of the survey the said land with general warranty.

From this decree the defendants appealed and assign as error, first, that the demurrer to the bill ought to have been sustained. It seems to us the bill is sufficient; that every necessary allegation and charge is contained therein. It was not necessary under the circumstances of the case, that the deed for the land should have been filed with the bill; there was a controversy about the quantity of land. The bill alleges, that a survey had been made; but where there is a sale of land by the acre, a right of surveying exists whether expressly reserved or not, and if no time is limited for making the election to survey, it may be done at any time before the whole business is closed between the parties. (*Nilson* v. *Carrington*, 4 Munf. 332; *Carter* v. *Campbell*, Gilm. 170; *Crawford* v. *McDaniel*, 1 Rob. 448.)

The appellants assign for error, that the boundaries in the contract are not the true boundaries of the land. It is true they are not the same as the boundaries set out in the surveyor's report; but the defendants can not now object, as they accepted the boundaries set forth in the surveyor's report, as showing the land they bought.

It is also objected, that the court did not decide, that Bassett alone purchased the land, and that the other defendants were his sureties, and did not decree that the deed be made to Bassett alone. There was no error in this. McCoy, as his contract shows, sold the land to the three defendants jointly. Whatever arrangements they made among themselves, as to who should have the land, did not concern McCoy. The defendants Strait and Cunningham can, if they choose, convey to McCoy.

It is also assigned as error, that eight and one fourth acres of the land were not the property of McCoy, but were sold

as school-land and bought as such by Bassett after the contract was made, and that he paid $3.50 then and gave bond and security to pay $10.50 more, the residue of the purchase-money. What he was thus compelled to pay might be allowed here, if the facts with reference thereto clearly appeared, showing defendants entitled to the abatement, but they do not ; and we therefore decline to make the abatement claimed.

It is also assigned as error, that no abatement was allowed for the fifty-one acres sold to Lot Martin. There was no error in this. All the defendants agree, that Bassett was the real purchaser of the land, and it was he and not McCoy who sold the land to Martin. The contract exhibited by the defendants shows, that Bassett sold the fifty-one acres to Martin; and in that contract it is provided as follows : " It is agreed that if said Lot Martin pays to said McCoy the said $5.00 per acre, as stipulated by Aaron Bassett, Frank Strait and Thomas Cunningham, then the deed is to be made by said McCoy to Lot Martin instead of Aaron Bassett," &c. McCoy was willing to accommodate Bassett but surrendered none of his rights under his contract by so doing.

There is no error in said decree; and it is therefore affirmed.

Affirmed.