GREEN v. SMALLEY. See Case No. 5,757.

GREEN (STANWOOD v.). See Case No. 13,-301.

## Case No. 5,761.

### GREEN v. TAYLOR et al.

[3 Hughes, 400.] [1]

Circuit Court, E. D. Virginia. May 5, 1879.

ACTIONS AGAINST HUSBAND AND WIFE—COMPETENCY OF HUSBAND AS A WITNESS IN WIFE'S FAVOR—"SALE IN GROSS."

1. In a case, in which an abatement was claimed for an alleged deficiency in the sale of a tract of land, in which the husband and wife were both made parties defendant, but the wife was not a necessary party defendant, *held*, that the husband is a competent witness to testify in favor of any interest of the wife, but is

[1] [Reported by Hon. Robert W. Hughes. District Judge. and here reprinted by permission.]

incompetent to testify against any such interest.

2. The words "sale in gross," when applied to the land itself, are synonymous with "contract of hazard," and preclude any claim for abatement in the purchase-money.

In equity. In the early part of December, 1872, W. A. S. Taylor was in Hampton. Whilst there he was approached by A. B. Green, who desired to purchase of him a tract of land near Newport News, of great prospective value, on account of being near the expected terminus of the Chesapeake and Ohio Railroad; land which he derived from his wife. Taylor agreed to write him from Norfolk (Taylor's home) a response to his proposition. On his return he wrote Green as follows: "Norfolk, Va., December 3d, 1872. Dear Sir: Mrs. Taylor can be induced to take for the farm $25,000, that is, about $62½ per acre (399⅔ assessed). She would entertain no proposition based simply on its agricultural value. I write in response to your request of yesterday. Of course, we do not hold the proposition open longer than your prompt reply. Yours truly, W. A. S. Taylor. P. S. Please keep offer to yourself. I desire no one to know it. W. A. S. T." This letter was never answered, and that negotiation terminated with it. About two weeks after this, one Titlow, a real estate agent of Hampton, the county-seat of the county where the land lay, made renewed overtures to Taylor, which were rejected; but Green denies Titlow's agency. Afterwards, on the 1st of January, 1873, Mr. Thomas Tabb, a prominent lawyer of Hampton, acting as the agent of Green, renewed negotiations with Taylor for the purchase of the land, offering $25,000, which was accepted. The deed was drawn by Mr. Tabb in Taylor's presence, and the boundaries furnished by Mr. Tabb, who was familiar with the property. In drawing the deed, Mr. Tabb inserted the clause "containing 400 acres more or less." Taylor refused to execute a deed guaranteeing any particular quantity, and insisted upon the insertion of a clause protecting him from any trouble on that score. Mr. Tabb then inserted the following clause, declaring that it would be sufficient to meet Taylor's purpose (Taylor not being a lawyer): "The said tract of land is sold in gross and not by the acre, and embraces the tract of land devised to Martha, the wife of the said William A. S. Taylor, by will of her father, the late Edward Parrish, and also the tract acquired by her under the will of her uncle, the late John Parrish." A third of the purchase-money was paid in cash, and the balance evidenced by two bonds secured by deed of trust on the land. The first bond was paid at maturity, and part of the second. After the greater portion of the second bond had been overdue, some two years or more, Taylor directed Mr. Tabb, the trustee, to sell under the trust deed. Thereupon Green filed a bill of injunction, in which he alleged a deficiency of 80 acres in the quantity mentioned in the deed, and claimed abatement therefor, making Taylor and wife and Tabb parties defendant. Mrs. Taylor had joined, according to the mode prescribed by law, in the deed of Taylor and wife to Green, but the bonds for the deferred payments were made payable to Taylor individually. Taylor answered the bill, claiming that the contract was a sale in gross, and denying Green's right to any abatement. A survey taken by order of court in this suit showed a deficiency of 63 acres. Taylor's deposition was taken in support of his answer, in which he detailed the conversation between himself and Tabb, held at the time of the execution of the deed. To this deposition the plaintiff excepted, on the ground that the husband could not testify either for or against his wife's interest, in a case where both were parties. The exception was overruled.

HUGHES, District Judge. Depositions of Taylor, the defendant, have been taken and filed in the cause, which are excepted to by complainant's counsel, on the ground that Taylor is an incompetent witness in consequence of his wife being a party to the cause. No objection is made by Green to the validity of Taylor's title to the land mentioned in the bill of complaint. In that bill Green prays for an injunction against the sale of the land which had been advertised under a trust deed after default in the payment of the last instalment of the purchase-money. Taylor was simply proceeding to collect a chose in action, in which his wife has no interest. Green's objection to the sale is that the tract of land does not contain as many acres as it was represented by Taylor to embrace, and he claims an abatement of price. He does not seek to avoid the contract of sale for fraud or otherwise. The deposition of Taylor relates to what transpired between himself and Green on the subject of the quantity of land at the time of Green's purchase of the land. Mrs. Taylor seems to have no interest in the controversy, and is merely a formal party to the cause, made so by Green in his bill; which the defendant, however, did not demur to on that ground. The incompetency of husband or wife as a witness in cases where the other was party to a suit, was by the old law based upon two grounds, viz., 1st, that of interest; and 2d, that of public policy. But section 858 of the Revised Statutes of the United States (passed in 1864, which is a substantial adoption of Lord Denman's act), removes the first ground in the federal courts of this country, and allows parties to a suit interested in the result to testify as competent witnesses.

The other ground of objection to the testimony of husband and wife is also wellnigh abolished in all civil cases in England; namely, the ground that the admission of their testimony would be against public policy.

Before the acts of parliament in England which were designed to remove this objection, the decisions of the English courts had greatly relaxed this rule, even in criminal cases. See Rex v. Inhabitants of All Saints, 6 Maule & S. 194; Rex v. Inhabitants of Bathwick, 2 Barn. & Adol. 647; Reg. v. Williams, 8 Car. & P. 284. But see also Rex v. Gleed, 3 Russ. Crimes (4th Eng. Ed.) 631. These cases go upon the distinction between incompetency and privilege. In this country the old rule in regard to the impolicy of such testimony remains, but I think I hazard nothing in holding that it is so much relaxed that it is not enforced except in cases where the testimony of husband or wife would be against the other in civil cases. See William & Mary College v. Powell, 12 Grat. 382; also, Stein v. Borman, 13 Pet. [38 U. S.] 209. The testimony of Taylor in this case cannot, under any sort of conjecture or by any possibility, be injurious to his wife. She is a party merely in form, having no interest in the recovery. If by possibility she have an interest, the testimony of her husband is in support of that interest, and not against it. The reason of the rule of evidence in question does not, therefore, apply here. Cessante ratione, cessat et ipsa lex. I see no sufficient ground, therefore, for the exclusion of Taylor's evidence.

Thereupon the case came on for hearing upon the issues of law raised by the bill and answer, and was argued by Legh R. Page, for complainant; and by Burroughs & Brother, and Sharp & Hughes, for defendant Taylor.

The briefs of the other counsel have been taken from the papers in this cause. That of Sharp & Hughes was as follows:

### Brief of Counsel for Defendants.

The questions in this case are: (1.) If Green is entitled to any abatement, should it be for seventy-five acres, the amount of deficiency shown by defendant's survey, excluding the part between high- and low-water mark from being counted in the amount named in the deed, or for only sixty-three acres, the amount of deficiency including that between high- and low-water mark in the deed? (2.) Is he entitled to any abatement, admitting the deficiency?

1. The first question is tantamount to this: Does a deed describing land as bounded by a navigable river (not as included between certain metes and bounds), convey the lands to high-water mark or to low-water mark? That is, does the ownership of riparian proprietors extend to high-water mark or to low-water mark? We maintain that the twelve acres should be included in the amount of land named in the deed. It is well settled in Virginia that the ownership of riparian proprietors extends to low-water mark. If not settled by the present statute (Code Va. c. 62, § 2), on the ground that the

words "right and privileges" do not mean ownership, the original statute (1 Rev. Code 1819, c. 87, p. 341; Acts 1819, c. 28) shows this to have been the meaning of the legislature. The original statute reads: "Hereafter the limits or bounds of the owners shall extend to ordinary low-water mark," and the present statute, which is but an abstract of the original one, evidently intends to pursue the same policy. And in the case of Hundley's Lessee v. Anthony, 5 Wheat. [18 U. S.] 374, the United States supreme court expressly decides that the ownership of riparian proprietors extends to low-water mark. This view was subsequently confirmed in Garner's Case, 3 Grat. 655; in French v. Bankhead, 11 Grat. 159, 160, and is stated by Prof. Minor (2 Minor, Inst. p. 20) to be the settled law of Virginia. The law is plain enough. But there are in the papers a couple of affidavits to the effect that it is the special custom in that locality to include land only to high-water mark. What are those affidavits worth? A special custom in the sense of a local law cannot exist in Virginia, especially in contravention of an express statute. Harris v. Carson, 7 Leigh, 632; Mason v. Moyers. 2 Rob. [Va.] 606; Gross v. Criss, 3 Grat. 262; 2 Minor, Inst. 493, 495. Nor can such a custom be proved or admissible in evidence to vary a written contract. Authorities, supra, and 2 Minor, Inst. 95, 168, 169, 955, 956. But even supposing such a custom admissible in evidence, it has not been proved in this case. An affidavit can no more prove a custom than it can prove any other fact. We are as much entitled to a cross-examination as we would be if the question of quantity itself was to be proved by deposition. On no ground can the twelve acres between high- and low-water mark be excluded from the land conveyed by the deed.

2. Next, is Green entitled to any allowance for the deficiency? He says in his bill that he was misled as to quantity by Taylor's representations, and that whether they were innocent or not, he should be relieved from this mistake. We deny that Taylor made any representation as to quantity. Green, by accepting the form of deed which was given him, precluded himself from any allowance for the deficiency. In other words, it is a sale in gross or contract of hazard. By accepting a deed for a sale of this character Green defeated all chance of compensation. It is well settled that in sales of this character no allowance is made for deficiency. Quantity is supposed to be no part of the contract, to be mere matter of immaterial description, and not a matter of representation. We admit that the presumption is against such contracts, and that in doubtful cases courts will incline to construe them cases of sale by the acre. But when we examine the cases decided in Virginia, and see what doubtful cases have by them been construed to be sales in gross, or contracts

of hazard, we can entertain no doubt of the result of this case, where the deed expressly provides that "this is a sale in gross and not by the acre." It is useless to quote or investigate English authorities on the subject, for the numerous decisions of the court of appeals of Virginia, nearly thirty in all, and the philosophical treatises contained in such works as Minor's Institutes and Lomax's Digest, settle the law for Virginia independently of any other decisions. Sales of land are divided into three classes:

(1.) The first class is the sale of a specified number of acres at a named price per acre, commonly designated as sales by the acre. In this class, in cases of excess or deficiency, relief will be granted, for here the quantity is of the essence of the contract, and in case of a deficiency the vendee did not get what he bargained for. To this class belong the cases of Carter v. Campbell, Gilmer, 170; Neal v. Logan, 1 Grat. 14; Triplett v. Allen, 26 Grat. 722; Bierne v. Erskine, 5 Leigh, 59.

(2.) The second class is of sales of an estimated number of acres for a gross sum. This class is commonly known as sales by estimation or sales for a gross sum. In this class also relief is allowed for errors too great to be imputable to mistakes in survey, for in this class also the parties are influenced by the quantity to a material extent in assessing the price, and quantity is of the essence of the contract. The cases under this class are Quesnel v. Woodlief, 6 Call, 238; Bedford v. Hickman, 5 Call, 236; Nelson v. Carrington, 4 Munf. 332; Nelson v. Matthews, 2 Hen. & M. 164; Duvals v. Ross, 2 Munf. 290; Blessing v. Beatty, 1 Rob. [Va.] 304; Crawford v. McDaniel, Id. 448; Walsh v. Hale, 25 Grat. 314; Hoback v. Kilgores, 26 Grat. 442.

(3.) The third class is of sales of a gross tract of land, as by specified boundaries, or described as "that parcel obtained by inheritance," or "that parcel mentioned in a certain survey." The technical name of this class is a sale in gross or a contract of hazard. The cases in the Virginia Reporters comprised under this class are Jollife v. Hite, 1 Call, 301; Pendleton v. Stewart, 5 Call, 1; Hull v. Cunningham, 1 Munf. 330; Grantland v. Wight, 2 Munf. 179; Fleet v. Hawkins, 6 Munf. 188; Tucker v. Cocke, 2 Rand. [Va.] 51; Foley v. McKeown, 4 Leigh, 627; Keyton v. Brawford, 5 Leigh, 39; Russell v. Keeran, 8 Leigh, 9; Seamonds v. McGinnis, 3 Grat. 319; Jones v. Tatum, 19 Grat. 735; Caldwell v. Craig, 21 Grat. 132.

The confusion which long shrouded the subject was caused by confounding the last two classes. In the second class it is well settled that relief is granted; in the last class, of sales in gross, it is equally well settled that mistake in quantity is no ground for relief. In the second class quantity is of the essence of the contract. In the last class the vendee desires a specified tract, and

quantity is mere matter of description, not a matter of warranty, and not supposed to influence the price to any material extent. Green may say in his bill that he relied on Taylor's representations as to quantity, and intended to buy so much. But by his acceptance of a deed of that form, the law makes him say the opposite. It makes him say that he did not care about the quantity, and only desired the tract. In the words of Judge Staples in Caldwell v. Craig, 21 Grat. 136: "It is difficult to imagine a case where the purchaser, in the price he agrees to pay, is not influenced by his estimate of the quantity. And if a mistake of this sort affords ground for equitable relief, it is clear there could no longer be a contract of hazard. We know, however, that such contracts, when fairly made and clearly established, are uniformly enforced by the courts. Nor is there any injustice in this principle of equitable jurisdiction. If the vendee encounters the hazard of a deficiency, the vendor incurs that of an excess; and it is impossible to say that this very hazard did not constitute an important element of the price. For whether the case be one of excess or deficiency, the mistake is not in the substance of the contract, but in relation to the very risk in the contemplation of the parties." And the case of Pendleton v. Stewart, 5 Call, 1, also decides that in sales in gross the quantity is not of the essence of the contract, but is mere matter of description. The authorities are remarkably unanimous in holding that relief is denied in cases of sales in gross or contract of hazard, for, in Russell v. Keeran, 8 Leigh, 19, and Blessing v. Beatty, 1 Rob. [Va.] 304, and in the very last case decided (Watson v. Hoy, 28 Grat. 704) these two phrases are everywhere used as synonymous, and are stated to mean, ex vi termini, the same thing. There is not a case of a sale in gross in which relief was decreed on the ground of mistake in quantity. Any fraud, such as that in Bedford v. Hickman, 5 Call, 236, and Duvals v. Ross, 2 Munf. 290, or any eviction by title paramount might be ground of relief even in sales in gross. But in the case of fraud, that would afford a distinct ground of equitable intervention. There is, however, in this case no proof or even hint of fraud. And in case of eviction by title paramount, relief would be decreed; for, besides the fact that it would fall under the covenant of general warranty, the vendee might lose the best portion of the tract of land that he contracted for, and be frustrated in the main object of his purchase. But these are the only grounds for relief in cases of sale in gross; for mistake in quantity, an immaterial matter of description, where a tract of land is bought as a tract, frustrates no object of the vendee, works no hardship upon him, or at least none which he has not expressly waived, and to which the vendor was not equally liable.

All the cases where relief has been allowed

on the ground of mistake were either sales by the acre or else sales by estimation, or as they are sometimes called, sales for a gross sum, and it is admitted that in such cases relief is proper. Quesnel v. Woodlief and Blessing v. Beatty [supra] were both cases of this class, and neither of them extends the doctrine to sales in gross. The latter case grants relief on the express ground that the case at bar was a sale for a gross sum, and in a dozen different passages uses the words "sale in gross as synonymous with contract of hazard," and states that were the case at bar such a case, no relief would be granted. As for example (page 300), "This (stipulation) changes a sale by the acre into a contract of hazard, and necessarily excludes the interposition of equity on the ground of mistake." And again (page 301): "We must bear in mind that upon the question of compensation, the substantial distinction is between a sale that is a contract of hazard and one that is not. When 'a sale in gross' is used as equivalent to a contract of hazard, the term is properly applicable not to the price but to the subject; for a sale by the acre may be a contract of hazard, and a sale for a gross sum may not. A sale in gross when applied to the thing sold means a sale by the tract without regard to quantity, and in that sense is (8 Leigh, 19) ex vi termini, a contract of hazard."

The very latest case reported (Watson v. Hoy, 28 Grat. 704) says that the sale of a certain tract is a contract of hazard. Page 704 et seq. This is just the ground on which we stand in this case. We maintain that the words "sale in gross," are in this deed synonymous with "contract of hazard." We so hold because the manner in which it is used in the deed shows it to have been so intended. The deed expressly provides, "This is a sale in gross and not by the acre, and embraces all that tract left to the wife of the vendor by her father." The case of Hull v. Cunningham, above quoted, decides that a description of a tract as "that inherited," etc., shows that the sale of a tract in gross was intended. The cases of Grantland v. Wight, 2 Munf. 179; Foley v. McKeown, 4 Leigh, 627; Seamonds v. McGinnis, 3 Grat. 319, decide that when land is sold by metes and bounds, the sale of a tract in gross is intended. In this deed the words "sale in gross" are evidently applied to the thing sold and not to the price, and consequently mean, ex vi termini, a contract of hazard. This is the regular legal meaning of the words as shown by their continual use in that sense in Minor's Institutes (volume 2, p. 626, and also pages 794, 795), Lomax's Digest (volume 2, marg. pages 61–68), and all the cases quoted at the beginning of class No. 3. This being the legal sense of the words, we may with confidence invoke the well-settled rule of construction (2 Minor, Inst. p. 951), that parties are presumed to use technical or legal words in their technical or legal sense, a pre-

sumption which is strengthened by the proof of the circumstances under which the deed was made. The deed was drawn by an experienced and distinguished lawyer (Colonel Tabb), who certainly knew the legal meaning of the words employed by him. It is in evidence that when the statement of quantity was inserted the vendor stopped him, and refused to warrant the quantity; that Colonel Tabb then inserted the above-quoted sentence for the express purpose of protecting Mr. Taylor from any future trouble on that score; that until those words were inserted Taylor refused to accept the deed, and that it was accepted by both Mr. Taylor and Colonel Tabb, Mr. Green's agent, as a guarantee against any future litigation. The very fact that the round number of 400 acres was used, is of itself pregnant proof that it was mere matter of immaterial description, and that a contract of hazard was in contemplation. These are the surrounding circumstances admissible in evidence as placing the court in the exact position of the contracting parties, and thus enabling it to form an unerring judgment of their intention. All the evidence, both circumstantial and positive, shows that both parties contemplated a contract of hazard, and it is perhaps useless to quote any more authorities to show that relief cannot be granted. It may, however, be well to quote a few extracts from the leading cases to substantiate this view of the law. In the case of Tucker v. Cocke, 2 Rand. [Va.] 51, Judge Green (pages 65–67) says: "This was therefore a contract of hazard, without any fraud, concealment, misrepresentation, or negligence on the part of the vendor. The error in respect to the quantity of land was mutual, and was not in relation to the substance of the thing contracted for; but in relation to the very hazard contemplated by the parties, the question is whether the disappointed party is in such case entitled to relief. . . . If relief could be given in such a case as the case at bar, a fortiori, it should be given if the vendor knew of the deficiency and concealed it. So that in both cases, when the vendor knew and when he was ignorant of the deficiency, relief being given, there could no longer be a contract in which a purchaser could take the risk of a deficiency effectually upon himself. The court of appeals have uniformly recognized the validity and obligation of such a contract, and in all cases in which they have given relief it has been founded on circumstances either of fraud, misrepresentation, or concealment, or mistake in whole or in part in relation to the substance of the thing contracted for. . . ." So also in Jollife v. Hite, 1 Call, 326, 327. "If it was meant to change or set aside a real contract for the sale of a tract of land in gross, at the risk of the purchaser for gain or loss by a deficiency or excess in the quantity it was supposed to contain by both parties, I do not hesitate to say that it was car-

ried too far, being an interference with fair contracts which no court has a right to make, since there was no mistake in the contract, whatever there might be in the estimate contemplated. Such contracts are made every day for the purchase of tracts of land in gross."

To the same effect are the cases of Pendleton v. Stewart, 5 Call, 1, and especially Caldwell v. Craig, 21 Grat. 136–140. And this view is the view taken by Lomax, in 2 Lomax, Dig. 61–68. and by Professor Minor, in 2 Minor, Inst. 626, and also 793–795, in which latter passage all the Virginia authorities are classified and digested so philosophically and accurately that those three short pages are a complete epitome of the law, and render useless any reference to the original cases. Without insulting the court by any further argument on a doctrine so well settled in view of the preceding authorities, we may safely maintain that in cases of contracts of hazard no relief is granted for mistake in quantity on the sole ground of mistake; that sales in gross and contracts of hazard are synonymous terms, and that the contract embodied in the deed from Taylor to Green was a contract of that description, and that an abatement in the purchase-money cannot on that ground be decreed. Nor is the deficiency in this case greater than in many of the cases in which relief was denied. Including the part contained between high- and low-water mark, the deficiency would be 75 acres, or about one-fifth. But the counsel for the plaintiff will hardly dispute in seriousness the proposition that this should be included in the tract, and this would reduce the deficiency to 63 acres, or about one-seventh. In Jollife v. Hite [supra] the statement was 578, the true amount 512, a deficiency of more than one-ninth. In Pendleton v. Stewart the stated amount was 1100, the true amount 940, a deficiency of one-seventh. In Fleet v. Hawkins the stated amount was 370, the true amount 338, a deficiency of one-eleventh. In Tucker v. Cocke the stated amount was 10,000 or 12,000, the true amount 9000, a deficiency of one-tenth or one-fourth. In Foley v. McKeown, the sale of a town lot, the deficiency was nearly half. In Keyton v. Brawford the stated amount was 340, the true amount was 290, a deficiency of one-eighth. In Russell v. Keeran the stated amount was 405, the true amount 290, a deficiency of one-third. In Seamonds v. McGinnis the stated amount was 140, the true amount 200, an excess of one-third. In Caldwell v. Craig the stated amount was 1000, the true amount 800, a deficiency of one-fifth. The above authorities dispose of the claim for relief on the ground of mistake. The claim on the ground of misrepresentation is equally futile. For if innocent it comes under the head of mistake, and the above authorities are applicable. There was, however, no representation of quantity made.

The only one was the first letter of Taylor containing an offer which was not accepted by Mr. Green, and the negotiations ensuing, which fell through completely. This, therefore, had nothing to do with the contract effected long after, for in the words of Judge Roane, in Jollife v. Hite, 1 Call, 307: "In a contract every serious and deliberate communication which has taken place between the parties relative thereto, so far as a former one has not been revoked by a latter, must be considered as forming the basis of the contract, with this exception, that the treaty must not at any intermediate time have been at an end."

But even if, despite all the above authorities, Mr. Green was entitled to an abatement, his long delay in asking for it precludes him from obtaining it. He pays the first instalment promptly; he makes no objection to the deficiency; he takes no steps to ascertain the deficiency; and now when years have elapsed and when the troubles of the Chesapeake and Ohio Railroad show him that he has engaged in a losing speculation, he adopts this plan of getting out of his bargain. But he is too late. Equity will not help those who sleep upon their rights; will not lend its aid towards fomenting strife; will do nothing that can tend to increase litigation; and will not be the instrument of disappointed speculators. The interests of society, which demand the quiet and security of titles and the end of litigation, cannot be sacrificed in favor of those who delay their complaints until the eleventh hour. These principles alike of policy and justice have been reaffirmed numberless times in the various cases above quoted, e. g., in Jollife v. Hite, 1 Call, 315. And if Green were not precluded from praying relief by his laches, he would be by the subsequent acquiescence, both implied and actual, which characterizes this case. The failure for so long a time to take steps to ascertain whether any deficiency existed, even if he had no knowledge of any deficiency, is, on the authority of the cases above cited, an implied acquiescence and a convincing argument to show, independent of that inferred from his acceptance of the deed, that he considered it a sale in gross, and thought it useless to set up any claim for deficiency. But it is in evidence that he thought there was a deficiency not long after the contract was made; that, though he often complained of it, he never set up any claim for abatement therefor; that, knowing and having long known of it, he nevertheless, after some time spent in asking further time of Taylor, entered into new arrangements to pay the entire purchase-money without once suggesting or asserting any right to demand an abatement. Not until he had failed to fulfil the new contract, and the property was advertised for sale under the trust deed, did he assert such a claim, and only as a last resort. What stronger acquiescence could be demanded than this?

HUGHES, District Judge. The chief reliance of complainant is on Taylor's letter of December 3d, stating the quantity of the land at about 400 acres. But the negotiation of which that letter was a part fell through. The negotiation which was carried into effect was that of January following. This negotiation was commenced by Mr. Tabb, as agent of complainant and trustee in the trust, who was fully as conversant, probably even more conversant with the property, its title and its quantity, than Taylor. It is difficult to suppose that Mr. Tabb could have been imposed upon by Taylor on that subject; and Mr. Tabb was agent of Green, the purchaser; Green standing there in the presence of Tabb, possessing as full knowledge of the subject of the sale as Taylor possessed. The letter, therefore, is no part of the res gestae. We can look only to the deed. That this sale by Taylor to Green was a contract of hazard is written in the deed. The deed conveyed a certain tract of land, bounded on the south by Hampton Roads, and by the lands of several named landowners on the north, east, and west, "containing 400 acres, more or less." No metes and bounds by courses and distances were set out. It contained a recital that "the tract of land is sold in gross and not by the acre, and embraces the tract of land devised to Martha, the wife of the said W. A. S. Taylor, by will of her father, the late Edward Parrish, and also the tract acquired by her under the will of her uncle, the late John Parrish." This language fulfils all the requirements which have been held by the courts to constitute a contract of hazard. The language quoted was inserted by a skilful and learned lawyer of the highest standing and reputation, who was acting at the time as the agent of Mr. Green; who was fully cognizant of the technical meaning of the language which he used; who was acquainted with the character of the land and the previous negotiations of the vendor and vendee; and who inserted the language in consequence of the refusal of the vendor to execute the deed unless this clause, making the sale a contract of hazard, was inserted. The clause was a matter of mutual consent between the vendor and the vendee's agent; and was put into the instrument in order to make clear the intention of the parties to be that this was a sale in gross and contract of hazard. If this is not a contract of hazard, it is difficult to imagine what can be such a contract. In law it is binding upon the parties as such.

I do not see that the plaintiff has much equity on his side. The deficiency of sixty-three acres shown by the survey in a tract thought to have contained about 400, is not as great as has been repeatedly held by our court of appeals not to entitle a vendee to an abatement of price; and there is no evidence that complainant's objection on this score was made with such promptness as to indicate a sense of wrong on the discovery of the deficiency. The sale was made in January, 1873, and I see nothing to indicate dissatisfaction with the quantity before 1877, after several instalments of purchase-money had been paid, and after he had been allowed an extension upon other instalments by the vendor. If his equity were clear, this would be gross laches. A court cannot undertake to set aside solemn contracts as deliberately made and as long acquiesced in as this was, where there is no fraud and no intentional deception practiced. The bill must be dismissed.